UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JIM SCRUGGS,

       Plaintiff,

v.                                    Case No. 2:20-cv-00048-RBS-RJK

CHW GROUP INC. and HOME
WARRANTY ADMINISTRATORS, INC.,

       Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT CHW GROUP, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

COMES NOW the Plaintiff, Jim Scruggs, by Counsel, and for his Response to Defendant CHW Group Inc.'s ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint, (ECF No. 27,) he submits the following.

## I.     INTRODUCTION

As Mr. Scruggs properly alleged in both his Complaint and First Amended Complaint, Defendant repeatedly called Mr. Scruggs to solicit him despite his repeated statements to Defendant to stop contacting him, in violation of federal and state law. In its Motion to Dismiss, Defendant fails to account for basic allegations set out in Mr. Scruggs's First Amended Complaint, erroneously applies an improper standard to Mr. Scruggs's pleadings, and misconstrues existing caselaw regarding Mr. Scruggs's claims.

Defendant's Motion is novel for what it does not contain—a denial that it is the one that called Plaintiff or that it did not do so in violation of federal and state law. Instead, Defendant's brief seeks to erect an impossible to surmount series of hurdles that no plaintiff could overcome without significant discovery. Defendant expects that its hyper-technical interpretation of the

statutes at issue and reliance on inapplicable caselaw will be sufficient to garner an unearned victory on its Motion, but the Court should not grant one. Rule 8 requires merely a "short and plain statement of the claim showing that the pleader is entitled to relief," and Plaintiff has provided that. Defendant is aware enough of Plaintiff's claims to mount a defense, and is entitled to no more at the pleadings stage. For the reasons set forth below, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint should be denied.

## II.      FACTS AND PROCEDURAL HISTORY

Prior to receiving any calls from Defendant, Mr. Scruggs had registered his cell phone number on the National Do Not Call Registry. (First Am. Compl. ¶ 12, ECF No. 22.) On January 24, 2019, Mr. Scruggs received a call in which the caller identified themselves as representing Defendant and attempted to sell Mr. Scruggs a home warranty.[1] (*Id.* ¶ 14.) On this call, Mr. Scruggs informed Defendant's representative he did not want to receive any further communications from Defendant. (*Id.* ¶ 15.) Despite this unequivocal statement, Defendant bombarded Mr. Scruggs with a slew of calls during which, each time, the caller identified themselves as a representative of Defendant and attempted to sell Mr. Scruggs a home warranty. (*Id.* ¶¶ 16–22.)

On January 24, 2020, Mr. Scruggs filed his original complaint in this Lawsuit, naming Defendant as one of the defendants. (ECF No. 1.) On June 15, 2020, Defendant filed its Motion to Dismiss the original complaint. (ECF No. 15.) On June 30, 2020, Plaintiff filed his First Amended Complaint. (ECF No. 22.) On July 14, 2020, Defendant filed its Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 27.)

## III.      LEGAL STANDARDS

---

[1] It cannot be reasonably disputed that Defendant sells home warranties. *See* HOME WARRANTIES EXPLAINED | CHOICE HOME WARRANTY HOME PAGE, https://www.choicehomewarranty.com/ (last visited Aug. 3, 2020).

A.      **The interplay between Rule 8 and Rule 12(b)(6).**

When filing a complaint, a plaintiff must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a). While a plaintiff's claim for relief requires more than "mere labels and conclusions," it also "does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, courts "do not require heighted fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A plaintiff has adequately stated a claim for relief when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A defendant can then move to dismiss such a complaint on a number of different grounds: such as lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(1), (6). In ruling on a 12(b)(6) motion, the Court's determination "of whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Further, such motions "test the sufficiency of a complaint; importantly, [the Court] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) (citations omitted); *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015). As the Fourth Circuit has cautioned, "courts must be careful not to import the summary-judgment standard into the motion-to-dismiss stage." *SD3, LLC*, 801 F.3d at 425.

When a defendant challenges the standing of a plaintiff, this is properly considered as a motion to dismiss under Rule 12(b)(1). *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). There are 3 elements required to show standing: (1) injury in fact, (2) traceability, and (3) redressability. *Id.* at 458 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Challenges to subject matter jurisdiction can be raised as facial attack or factual attack. *Davis v. White*, No. 4:16–cv–18, 2017 WL 6273488, at *3 (E.D. Va. Dec. 8, 2017); *Rowland Marietta, Inc. v. Casdorph*, No. 2:08-00343, 2008 WL 11381425, at *6 (S.D. W.Va. Nov. 26, 2018). A facial attack involves the defendant asserting that the complaint fails to allege facts upon which subject matter jurisdiction can based. *Davis*, 2017 WL 6273488, at *3. Under such a challenge, the "well-pleaded facts asserted in the complaint are assumed to be true and are construed in the light most favorable to the plaintiff." *Id.* at *3 (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). On the other hand, a factual attack involves a challenge to subject matter jurisdiction in fact, apart from anything alleged in the pleadings. *Id.* Under such a challenge, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

## B.       The statutory provisions at issue.

Under the Telephone Consumer Protection Act (TCPA), a residential telephone subscriber may sue an entity that has placed calls to that subscriber in violation of the regulations created under the TCPA to protect subscribers' telephone privacy rights. 47 U.S.C. § 227(c)(5). These regulations protect a subscriber who has registered his phone number on the national Do-Not-Call Registry from receiving unwanted telephone solicitation calls. 47 C.F.R. § 64.1200(c)(2). Further, an entity may not make phone calls to a residential telephone subscriber unless the entity has instituted reasonable procedures for maintaining a list of subscribers who request not to receive

such telemarketing calls from that entity (internal DNC requests). 47 C.F.R. § 64.1200(d). At a minimum, such reasonable standards include recording when subscribers make such requests, maintaining a record of such requests, and honoring such requests within a reasonable time. 47 C.F.R. § 64.1200(d)(3),(6). The TCPA is a remedial statute and thus "should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 517 (N.D. W. Va. 2016) (citations and quotations omitted).

Under the Virginia Telephone Privacy Protection Act (VTPPA), telephone solicitors are prohibited from making telephone solicitation calls to a Virginia resident where that Virginia resident has previously stated that he does not wish to receive such calls from that telephone solicitor or the entity on behalf of who the telephone solicitor made the call. VA. CODE ANN. § 59.1-514(A). A Virginia resident can simply tell the telephone solicitor to stop calling him in order to invoke this protection. *Id.* Such telephone solicitation calls cover any telephone calls to a Virginia resident's cell phone where such calls are made to offer or advertise goods or services for sale. VA. CODE ANN. § 59.1-510. Even if the seller of such goods and/or services did not call the Virginia resident directly, such calls are presumed to have been made on seller's behalf, regardless of if an agency relationship exists between the actual caller and seller, and thus the seller is jointly and severally liable for such calls that violate the VTPPA. VA. CODE ANN. § 59.1-514.1.

## IV.    ARGUMENT

Mr. Scruggs has adequately pleaded both claims under the TCPA and VTPPA. Initially, it is noteworthy that Mr. Scruggs has adequately pleaded, and Defendant does not challenge, that he is a residential telephone subscriber. *See Boger v. Citrix Sys., Inc.*, No. 8:19-cv-01234-PX, 2020 WL 1033566, at *4 (D. Md. Mar. 3, 2020).  As further detailed below, Mr. Scruggs has also

adequately pleaded that Defendant initiated the calls, making Defendant's violations of the TCPA actionable. Thus, Defendant's motion to dismiss Count One under Rule 12(b)(6) should be denied. For similar reasons, and as detailed below, Mr. Scruggs has demonstrated standing to sue in federal court and thus Defendant's motion to dismiss under Rule 12(b)(1) should also be denied.

Mr. Scruggs has clearly pleaded that he is a Virginia resident and he received telephone solicitation calls which were on behalf of Defendant. He has also adequately pleaded that he repeatedly told the callers in these calls to stop contacting him. Consequently, Mr. Scruggs is entitled to recover on his VTPPA claim and this Court should deny Defendant's motion to dismiss Count Two.

## A.     Mr. Scruggs has demonstrated Article III standing.

Mr. Scruggs has pleaded basic facts about the calls he received that describe the contents of those calls and implicate Defendant, despite Defendant's nonsensical assertions to the contrary. *(Compare* Am. Compl. ¶¶ 16-22, ECF No. 22 (repeatedly detailing calls where caller identified with Defendant and attempted to sell products Defendant sells) *with* Mot. Dismiss 21, ECF No. 27 (claiming there are "not sufficient facts showing . . . any conduct directly or indirectly attributable to CHW or that there is any relationship between CHW and any third party who may have called" Mr. Scruggs).) Defendant does not introduce any new facts to challenge this Court's subject matter jurisdiction, but rather merely challenges Mr. Scruggs's standing based on his pleadings, thus Defendant only raises a facial attack to standing. *Davis*, 2017 WL 6273488, at *3. Accordingly, when evaluating Mr. Scruggs's standing, his well-pleaded facts are assumed to be true and are construed in the light most favorable to the him. *Id.* In order to demonstrate standing, Mr. Scruggs must show that he has suffered an injury in fact which is fairly traceable to Defendant, and redressable through the relief he seeks. *White Tail Park, Inc.*, 413 F.3d at 549.

Mr. Scruggs has demonstrated that the offending conduct in his complaint is traceable to Defendant by alleging that Defendant is the one who called him. Nothing more is needed. *See Drake v. FirstKey Homes, LLC*, 439 F. Supp. 3d 1313, 1323-24 (N.D. Ga. 2020) (finding plaintiff demonstrated traceability where defendant made offending calls to plaintiff despite the fact that third party misrepresented who plaintiff's phone number belonged to); *see also Hurley v. Messer*, No. 3:16-9949, 2018 WL 4854082, *5 (S.D. W.Va. Oct. 4, 2018) (finding that plaintiff's injury met traceability where plaintiff alleged the defendant initiated the calls) ("Hurley I"); *Wick v. Twilio Inc*, No. C16-00914RSL, 2017 WL 2964855, at *2 (W.D. Wash. July 12, 2017) (finding plaintiff had standing for TCPA claims against cloud-based texting platform). The "traceability requirement is less stringent than proximate cause: 'even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Drake*,  439 F. Supp. 3d at 1324 (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019)). Mr. Scruggs has clearly pleaded that he received a series of phone calls from Defendant, and the callers identified themselves with Defendant and tried to sell Mr. Scruggs's Defendant's product. These facts, which must be taken as true at this stage, meet Mr. Scruggs's burden to show that these unlawful calls are traceable to Defendant.

Mr. Scruggs has demonstrated the redressability of his claims by pleading that he suffered actual damages and is thus seeking monetary relief from Defendant to compensate him for these damages. *See Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1137 n.2 (D. Minn. 2017) (noting that the TCPA's statutory damages redress plaintiff's harm of cell phone charges, invasion of privacy, frustration, distress, harassment and annoyance). To show redressability, Mr. Scruggs needs to show that it "is likely, as opposed to merely speculative" that his injury will be redressed by a favorable decision from this Court.  *Sierra Club v. U.S. Dep't of*

*the Interior*, 899 F.3d 260, 284 (4th Cir. 2018). However, he does not need to show that such a decision would completely relieve his injury, only that he would "personally benefit in a tangible way from the court's intervention." *Id.* Mr. Scruggs seeks statutory damages which will redress the lost time, interruption to his life, harassment, frustration, anger, annoyance, and stress he has experienced due to Defendant's unlawful calls. Such a monetary award will provide him a clear tangible benefit to compensate him for the harm he has suffered from these unlawful calls. Defendant attempts to imply that some "unidentified third parties" made these calls yet has provided zero factual support for this contention. (Mot. Dismiss 21-22, ECF No. 22.) Defendant has not even denied that it made the unlawful calls to Mr. Scruggs. Thus, this Court should find that Mr. Scruggs has adequately demonstrated redressability through his pleadings.

Given that Plaintiff has shown that he has suffered injury-in-fact,[2] fairly traceable to Defendant, and the redressability of the relief he seeks, this Court should find that Mr. Scruggs has standing and thus deny Defendant's 12(b)(1) motion.

**B.     Scruggs has alleged sufficient facts that the calls came from Defendant.**

Mr. Scruggs has pleaded sufficient facts to plausibly show the violating calls he received came from CHW. At this early stage in litigation, Mr. Scruggs need only show that allegations are plausible, not necessarily even probable. *See SD3, LLC*, 801 F.3d at 418 ("A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of this facts is improbably, and that a recovery is very remote and unlikely") (citing *Twombly*, 550 U.S. at 556). Nonetheless, Mr. Scruggs's allegations make it clear that it is not only plausible, but certain, that the calls he received came from Defendant. Defendant responds by mischaracterizing the allegations and

---

[2] Defendant has not challenged that Mr. Scruggs has suffered injury-in-fact and indeed Mr. Scruggs's pleadings show that he has suffered such injury. (First Am. Compl. ¶¶ 24-26, 39, 36, ECF No. 22.)

applying an improper pleading standard to Mr. Scruggs's allegations. The Court should thus find that Mr. Scruggs has adequately pleaded that Defendant made the offending calls.

### 1. Mr. Scruggs's factual allegations demonstrate Defendant initiated the calls.

In considering Defendant's Rule 12(b)(6) motion, Mr. Scruggs's well-pleaded allegations are to be accepted as true and in the light most favorable to him. *Skochin v. Genworth Life Ins. Co.*, 413 F. Supp. 3d 473, 480 (E.D. Va. 2019). In light of the low bar set by Rule 8, Mr. Scruggs has clearly stated in his Complaint that he received multiple calls in which the callers identified themselves as representatives of Defendant. Further, these callers also attempted to sell Mr. Scruggs the same product that Defendant sells—home warranties. It is not only plausible, it is nearly a foregone conclusion that Defendant is responsible for the unwanted calls that Mr. Scruggs received, either directly or vicariously. Indeed, regardless of whether it would be proper, Defendant has not provided any facts that even suggest the calls did not originate from Defendant. This Court should find that at this stage in the case, Mr. Scruggs has met his pleading burden regarding Count One and deny Defendant's motion to dismiss this count.

Defendant cited caselaw does not support a different result. Indeed, while Defendant argues that its cases present the commonplace result in instances like this one, that position is incorrect. Defendant cites outlier cases that involved attenuated connections between defendants and called parties, whereas this case presents a straightforward application of TCPA principles—Defendant called Plaintiff, at his residential phone number after that number was placed on the national Do Not Call List and Defendant continued calling even after Plaintiff expressed his desire to not be called, in violation of the TCPA and VTPPA. Nothing else is needed for Plaintiff's claims to survive Rule 12(b)(6) scrutiny. *See, e.g.*, *Jennings v. Cont'l Serv. Grp., Inc.*, 239 F. Supp. 3d 662, 665 (W.D.N.Y. 2017) (finding allegations "that Defendant made calls to Plaintiff's cell phone

using 'a blended pre-recorded and artificial message[,]'" and "that the calls were not for emergency purposes, nor did Plaintiff provide 'express consent' for Defendant to make calls to his cell phone using an artificial or pre-recorded voice" were sufficient to survive Rule 12(b)(6)); *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1347 (M.D. Fla. 2018) (finding allegations "that Defendants used a telephone facsimile machine to send the Fax to the telephone lines and facsimile machines of Plaintiff and the putative class[,]" "that the Fax advertises products, goods, and services from which Defendants' [sic] derive revenue[,]" and "that Defendants sent the Fax to it and the putative class without permission or without requisite opt-out language" were sufficient to state a TCPA junk-fax claim); *Charvat v. Home Depot U.S.A., Inc.*, No. 1:17-cv-01446-ELR, 2017 WL 11495275, at *1 (N.D. Ga. Nov. 6, 2017) (concluding that allegations that "Defendant US Home Center, as part of Home Depot's 'Authorized Service Provider' program, initiated repeated telephone calls to Plaintiff and others in an attempt to generate business for Defendant Home Depot[,]" and that "these calls occurred in violation of 47 U.S.C. § 227(c) despite Plaintiff registering his telephone number with the National Do Not Call Registry" were sufficient to surmount a Rule 12(b)(6) challenge); *Aronson v. Generation Mortg. Co.*, No. CIV.A. 13-1702, 2014 WL 641622, at *1 (W.D. Pa. Feb. 19, 2014) (holding allegations "that said Defendant initiated the offending call made to [plaintiff] which allegedly violated the TCPA, providing sufficient details of the date, time and place (his residence) of the offending call in support of his claim" were enough to survive Rule 12(b)(6)).

Defendant's cited cases, on the other hand, involve much more nuanced allegations and connections to the calling process. For instance, one of Defendant's cases involved a complicated arrangement between manufacturers, distributors, and dealers in the home security system industry and telephone pitches to consumers to buy such systems. *In re: Monitronics*, 223 F. Supp. 3d at

521; *Hodgin v. UTC Fire & Sec. Ams. Corp., Inc.*, 885 F.3d 243, 246-48 (4th Cir. 2018). That case also had already proceeded into discovery and the court found that the plaintiffs had not been diligent in conducting their discovery. *In re: Monitronics*, 223 F. Supp. 3d at 528-29. The court consequently granted the moving defendants' motions for summary judgment, finding that no agency relationship existed based on the evidence in the record. *Id.* at 529. The facts and procedural posture of the case at hand are completely distinguishable from *Monitronics.* Here, Mr. Scruggs has pleaded that he received calls in which the caller identified themselves with Defendant. There is currently no evidence to indicate a complicated web of entities similar to the situation in *Monitronics*. Most importantly, no discovery has been conducted in this case and Defendant has moved to simply dismiss Mr. Scruggs's complaint under Rule 12(b)(6), whereas a key part of the *Monitronics* court's decision was the fact that discovery had been conducted and there was insufficient evidence to support the plaintiff's claims. Given these glaring differences, the Court should disregard *Monitronics* and deny Defendant's motion to dismiss.

Defendant's other cited case from this Circuit, *Hurley v. Messer*, actually shows—like the abundance of cases cited above—that Mr. Scruggs has pleaded adequate facts connecting Defendant to the violating conduct. No. 3:16-9949, 2018 WL 4854082 (S.D. W.Va. Oct. 4, 2018). Similar to *Monitronics*, *Hurley I* also involved a complicated array of different entities as defendants. *Hurley I*, 2018 WL 4854082, at *1. Three of the defendants then moved to dismiss the claims against them. *Id.* The court noted that the only allegation in the complaint that implicated one defendant was that defendant had simply served as an intermediary for another defendant to hire voice actors for content on the calls in question. *Id.* at *3. The court then found this allegation was insufficient to show the defendant had initiated the calls and granted this defendant's motion to dismiss. *Id.* at *3, *7. Turning to the other two moving defendants, the court noted that while

the plaintiff alleged these defendants were only "a calling platform for others to use," the plaintiff had still adequately pleaded facts to state a plausible claim that these defendants were liable for the alleged TCPA violations. *Id.* at *4. The court thus denied in part these two defendants' motion to dismiss.[3] *Id.* at *7.

In contrast to the allegations concerning the defendants in *Hurley I*, Mr. Scruggs's pleadings much more directly implicate Defendant in the illegal calls that Mr. Scruggs received. Mr. Scruggs has pleaded that callers, who specifically identified themselves as representatives of Defendant, called him multiple times to sell him services which Defendant sells. Just as the *Hurley I* court found that the two calling platforms could be liable for TCPA violations as having initiated calls, this Court should find that Defendant, who is much more closely tied to the unlawful calls, can be liable for TCPA violations through these calls and that Mr. Scruggs has pleaded adequate facts that allow the Court to conclude Defendant initiated these calls.

Defendant's final cited case from this Circuit is equally distinguishable. In *Aronson v. CHW Grp., Inc.*, the Court found that the complaint against this same Defendant was "devoid of facts such as how the caller identified itself [and] the substance of the calls," among other details that would indicate the defendant made the calls. No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019). This Court noted that there was only a single factual allegation to support the plaintiff's contention that the calls came from the defendant: that one of the calls came from a number allegedly belonging to the defendant, but there was no allegation as to how plaintiff supposedly knew this. *Id.* In light of these issues with the pleadings, the Court granted the defendant's motion for judgment on the pleadings. *Id.* at *5. In stark contrast, Mr. Scruggs

---

[3] The court granted these two defendants' motion to dismiss a third claim which was premised on a theory of vicarious liability. *Id.* at *6–7. Such a claim is not pertinent to the current issues before this Court.

specifically pleaded when the calls were made, that the callers identified themselves as representatives of Defendant, *and* specified that the calls were to try to sell Mr. Scruggs a product that Defendant sells. Thus, if anything, *Aronson* supports Plaintiff's arguments against dismissal, as his Amended Complaint contains all of the details the Court found lacking in that case. The Court should conclude that Mr. Scruggs has adequately pleaded facts that demonstrate the unwanted calls were initiated by Defendant.

### 2.      Regardless of whether CHW is directly or vicariously liable, Mr. Scruggs has sufficiently pleaded liability.

As Defendant recognizes, an entity can be liable for violations of the TCPA whether it made the calls directly or indirectly. *In re: Monitronics*, 223 F. Supp. 3d at 519; Dish Network, LLC, 28 FCC Rcd. 6574, 6593 ¶¶ 47-58 (2013). An entity can be found vicariously liable for TCPA violations via federal common-law principles of agency. Dish Network, 28 FCC Rcd. at 6584 ¶ 28.  In its *Dish Network* ruling, the FCC also clarified that "we stress nothing in this order requires a consumer to provide proof—at the time it files its complaint—that the seller should be held vicariously liable for the offending call." *Id.* at 6593 ¶ 47. Courts have noted that "[a]gency is a notoriously fact-bound question" that may be determined on *summary judgment* "only where the evidence would not permit a reasonable jury to find for the nonmoving party." *In re: Monitronics,* 223 F. Supp. 3d at 520 (quoting in part *Spitz v. Proven Winners N.A., LLC*, 759 F.3d 723, 731 (7th Cir. 2014)).

And that conclusion makes complete sense, as it is nearly impossible for Mr. Scruggs to at this point know precisely what entity actually initiated the calls to him. *See Virgne v. C.R. Eng., Inc.*, No. 1:19-cv-02011-SEB-MJD, 2020 WL 470294, at *3 (S.D. Ind. Jan. 28, 2020) ("[r]equiring any higher degree of specificity [in a complaint] risks making it 'nearly impossible for plaintiffs' to state a claim under the TCPA and would make defendants 'virtually immune to TCPA

claims.'"). This is particularly true given that many businesses use third-party vendors to make marketing calls for them. *See Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2020 WL 3492469, at *2 (D. Mass. June 26, 2020) (discussing telemarketers who called on behalf of defendant in context of motion to compel discovery); *Murray v. Grocery Delivery E-Servs. USA Inc.*, No. CV 19-12608-WGY, 2020 WL 2543170, at *2 (D. Mass. May 19, 2020) (same, in ruling on motion to compel arbitration). Whatever the case with this Defendant, it is enough for Plaintiff to allege that either the Defendant or someone acting on its behalf placed the calls to Plaintiff to survive Defendants' Motion. *Jennings*, 239 F. Supp. 3d at 665 (holding that the plaintiff stated a claim for direct liability by alleging "[d]efendant made calls to the [p]laintiff's cell phone using 'a blended pre-recorded and artificial message'"); *Desai v. ADT Sec. Servs., Inc.*, No. 11 C 1925, 2011 WL 2837435, at *1 (N.D. Ill. July 18, 2011) (agreeing that where plaintiff "allege[d] that the calls were made 'by or on behalf of ADT, and/or with ADT's knowledge, consent, approval and/or acquiescence," such was enough to deny defendant's Rule 12(b)(6) arguments that plaintiff had not sufficiently alleged defendant "initiated" the offending calls). Mr. Scruggs has adequately pleaded that Defendant made the calls despite Defendant's insinuations, without any factual support, that another entity was involved. *See Serban v. Cargurus, Inc.*, No. 16 C 2531, 2016 WL 4709077, at *3 (N.D. Ill. Sept. 08, 2016) (noting that "at [the motion to dismiss] stage of the case, [defendant's] presentation of an 'alternative explanation of the facts alleged in the complaint is insufficient to demonstrate that the complaint plausibly fails to suggest a right to relief'").

As these decisions confirm, it is premature for Mr. Scruggs to be required to demonstrate whether Defendant is directly or vicariously liable for the unlawful calls. No discovery has been conducted in this case and Defendant has not even filed an Answer. In its opposition brief, Defendant mistakenly attempts to raise an issue that is normally reserved for trial, or summary

judgment at the earliest. Defendant's litany of cases regarding TCPA direct liability are inapplicable to the clear facts in this case: that Mr. Scruggs received specific calls on specific dates, in which the callers identified themselves with Defendant and attempted to sell Mr. Scruggs Defendant's product.[4] There is simply no mystery here, despite Defendant's desire to create one. Defendant then cites to another host of cases to regurgitate agency principles, but yet again these cases are inapplicable.[5] At the pleading stage, Mr. Scruggs need only allege facts which, when

---

[4] Defendant's cases on directly liability either involve identified third-party entities or vague, facially deficient pleadings, neither of which are at issue here. *See Sheski v. Shopify*, No. 19-cv-06858-HSG, 2020 WL 2474421, at *1, *3 (N.D. Cal. May 13, 2020) (involving third-party texting platform defendant who did not actually send texts); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 769, 771 (N.D. Ill. 2014) (noting that from facts in complaint "no question that [third party marketing company]—not Defendants—physically placed" calls); *Donaca v. Dish Network*, 303 F.R.D. 390, 392-94 (D. Colo. 2014) (granting summary judgment, after discovery, where complaint "focused not on calls directly made by [defendant] but on calls made by" third parties); *Melito v. Am. Eagle Outfitters Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, at *5–6 (S.D.N.Y. Nov. 30, 2015) (involving defendant who neither sold products advertised in text messages nor actually sent the text messages); *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *1, *3 (N.D. Ill. Oct. 18, 2017) (involving complaint where plaintiff did not plead that defendant made any calls directly but rather calls were made by third-party dealers); *Wick*, 2017 WL 2964855, at *4 (finding "cloud-based service provider[] that transmit[ted] third-party content" in *text messages* was not directly liable for offending *phone call* where only fact connecting service provider to the call was that plaintiff pleaded the call "gave the impression that the [caller] was in a 'call center'"); *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *1, *3 (D.N.M. Sept. 28, 2018) (involving complaint that stated caller said he was with another entity different from defendant); *Hyatt v. JB Hunt Transp. Servs. Inc.*, 5:15-CV-05056, 2015 WL 13648356, at *1– 2 (W.D. Ark. June 16, 2015) (finding plaintiff had "failed to plead any facts" that would state a claim, including "the general content or nature of [the offending] calls"); *Cholakyan v. Mercedes-Benz USA, LLC*, No. CV 10-05944 MMM (JCx), 2012 WL 12861143, at *1 (C.D. Cal. Jan. 12, 2012) (involving claims dealing with vehicle defects and no mention of TCPA); *Sepehry–Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987 (N.D. Cal. 2014) (noting "[p]laintiff does not identify the content of any call" nor did he "list specific calls that occurred on specific dates" nor "why he believes these calls were made by" defendants).

[5] Defendant's cases concerning vicarious liability involved third party callers identified in the pleadings, whereas Mr. Scruggs's pleadings make no mention to a third party, but rather clearly indicate that Defendant made the calls in question. *See Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 WL 5992123, at *1–2 (N.D. Cal. Dec. 4, 2017) (involving allegations that defendant hired third-party telemarketers who physically made calls); *Linlor v. Five9, Inc.*, No.: 17cv218-MMA (BLM), 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017) (involving defendant whose only alleged involvement in offending text messages was providing toll-free number to another

taken as true, indicate that its plausible that Defendant made the unlawful calls. Given that Mr. Scruggs has adequately pleaded such facts, this Court should find that Defendant's argument regarding Mr. Scruggs's theory of liability to be without merit and thus deny Defendant's motion to dismiss.

### C.    The calls Mr. Scruggs received were telephone solicitation calls under the TCPA.

As Defendant has stated, the implementing regulations of the TCPA define a telephone solicitation call as "the initiation of a telephone call . . . for the purpose of encouraging the purchase . . . of . . . goods, or services . . . which is transmitted to any person."[6] 47 C.F.R. § 64.1200(f)(14). Mr. Scruggs pleaded specifically and repeatedly that in the calls referenced in his complaint, the caller "attempted to sell a home warranty to Mr. Scruggs." (First Am. Compl. ¶¶ 16–22, ECF No. 22.) The clear interpretation of these allegations, even more so when viewed in a light most

---

defendant); *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129-YGR, 2018 WL 1524067,  at *6 (N.D. Cal. Mar. 28, 2018) (involving defendant who was alleged to not have been involved in sending any offending text messages and rather complaint indicated other parties "controlled whether, when, and to whom to send the text messages along with their content"); *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 (MKB), 2019 WL 2280731, at *1 (E.D.N.Y. Feb. 25, 2019) (involving alleged scheme were plaintiff received offending call, was transferred to a live person, and then later received another call in which caller was defendant's employee and stated that defendant regularly uses prerecorded advertising material); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 451-53 (9th Cir. 2018) (granting summary judgment to seller who did not make calls but used third party calling service where there was abundant evidence on record regarding the nature of the relationship between parties); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, at *1, *5 (N.D. Ohio Mar. 18, 2016) (involving a complaint that alleged defendant used third party marketers to make calls and ruling after more than a year of discovery had been conducted); *Panacci v. A1 Solar Power, Inc.*, No. 15–cv–00532–JCS, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (involving allegations that calls came from separate entity from seller defendant); *Naiman v. Freedom Forever, LLC*, No.19-cv-00256-JSC, 2019 WL 1790471, at *1 (N.D. Cal. Apr. 24, 2019) (involving complaint that alleged a group of defendants made offending calls to plaintiff); *Gulden v. Consol. World Travel Inc.*, No. CV-16-01113-PHX-DJH, 2017 WL 3841491, at *1, *3 (D. Ariz. Feb. 15, 2017) (involving complaint that alleged defendant or third parties made offending calls and that calls did not clearly state identity of the business, with court noting that plaintiff "offers no factual support" for allegation the defendant or its agents made calls).

[6] The definition continues that certain exemptions apply, none of which are at issue here.

favorable to Mr. Scruggs, was that these calls were for the purpose of encouraging Mr. Scruggs to purchase goods or services (a home warranty). To support its argument to the contrary, Defendant cites cases that are entirely factually distinguishable from Mr. Scruggs's situation, as they do not address calls that were clearly made for telemarketing purposes. *Norman v. N. Ill. Gas Co.*, No. 13 cv 3465, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (finding that wrong number calls where caller ended call upon realization of wrong number were not telephone solicitation calls); *Jung v. Bank of Am., N.A.*, No. 3:16-CV-00704, 2016 WL 5929273, at *9 (M.D. Pa. Aug. 2, 2016) (dismissing *pro se* plaintiff's TCPA claim which was based on debt collection calls). This Court should thus find that Plaintiff has sufficiently alleged that the calls Defendant made were telephone solicitation calls under the TCPA and implementing regulations.

**D.      There is no automatic 30-day safe harbor under the TCPA to honor internal DNC requests.**

TCPA regulations require a residential telephone subscriber's do-not-call request to be honored within a "reasonable time from the date such request is made," and such time frame "may not exceed 30 days." 47 C.F.R. § 64.1200(d)(3). As noted recently by another court in this Circuit, "this provision does not . . . create a safe harbor for follow up calls placed within thirty days after the first call." *Boger*, 2020 WL 1033566, at *5; *see also Martin v. Comcast Corp.*, No. 12 C 6421, 2013 WL 6229934, *6 (N.D. Ill. Nov. 26, 2013); *Nece v. Quicken Loans Inc.*, No. 8:16-cv-2605-T-23TBM, 2017 WL 2865047, at *1–2 (M.D. Fl. Jan. 3, 2017) (clarifying that 30 day period under (d)(3) is not a safe-harbor but rather maximum reasonable time to honor an internal DNC request, finding what was a reasonable time to be "a factual dispute resolved with the benefit of the evidence," and denying motion to dismiss). Defendant makes just this rejected argument here— that it has an automatic, 30-day reprieve for any calls made after a do-not-call request. That position is fundamentally wrong.

In *Martin,* the plaintiff alleged that the defendant placed eight solicitation calls to his cell phone over the course of six days, and that around four days prior to the first call, the plaintiff had mailed a letter to the defendant to tell the defendant to stop contacting him. *Martin*, 2013 WL 6229934, at *1. The defendant moved to dismiss the plaintiff's TCPA claim, based in part on its argument the implementing regulations of the TCPA gave it a reasonable grace period to implement internal DNC requests. *Id.* The defendant asked the court to "hold as a matter of law that a week to honor plaintiff's requests is a 'reasonable' amount of time, especially since the regulation allows for up to 30 days." *Id.* at *5. The court ultimately denied the defendant's motion to dismiss, noting that arguments concerning what a reasonable time is under § 64.1200(d)(3) "should be addressed after the facts have been pinned down through discovery" and rejecting the notion that "either . . . a week or 10 days is reasonable as a matter of law." *Id.* at *6. Mr. Scruggs's situation is very similar to the *Martin* plaintiff's: he received a series of unwanted calls over a condensed period of time and now Defendant seeks to dismiss his claim stating that it used a reasonable amount of time to honor his DNC requests. This Court should follow the rationale in *Martin* and find that it is premature to rule on the reasonableness of Defendant's conduct and that such an issue requires discovery.

In determining whether Defendant applied a reasonable amount of time in honoring Mr. Scruggs's DNC requests, it is also important to consider how much technology has evolved over the past several decades. *See* In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14036 ¶ 30 (2003) (noting that changes in technology have impacted the reasonableness of maintaining a DNC list). Indeed, it is easy to picture a digital list or database of customers that Defendant's callers simply run through when making telemarketing calls. It is also easy to comprehend that such a list could contain a specific column or field to

indicate internal DNC requests when a telephone subscriber makes such a request during one of the telemarketing calls.[7] As demonstrated through the case law above, the reasonableness of the time it took Defendant to honor Mr. Scruggs's DNC requests is a question of fact that should not be decided on a motion to dismiss.

Defendant improperly asks the Court to make a factual determination when there is no evidence in the record concerning the reasonableness of the time it took Defendant to honor Mr. Scruggs's DNC requests.[8] At best, Defendant's request for dismissal of Count One presents a factual dispute that requires discovery into the reasonableness of Defendant's failure to more

---

[7] Indeed, leading sales and marketing platforms contain such internal DNC tracking as standard functionality. *See Respect Do-Not-Contact Settings in Data.com Search Results and Exports*, SALESFORCE, https://help.salesforce.com/articleView?id=jigsaw_int_respecting_do_not_contact_settings.htm&type=5 (last visited Aug. 7, 2020).

[8] Again, Defendant cites cases that are either clearly distinguishable from Mr. Scruggs situation or do not provide a clear rationale for this Court to follow. A number of the cited case dealt with a motion for summary judgment, so there was a record against which to judge reasonableness. *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 133 n.7, 140, (D. Conn. 2016) (granting summary judgment to defendant on 64.1200(d) claim where the parties had already "conducted extensive discovery"); *Hurt v. Bank of Am.*, No. 3:12cv184–REP–DJN, 2012 WL 12904236, at *1 (E.D. Va. July 11, 2012) (involving attempt to unwind mortgage foreclosure and never mentioning the TCPA). In contrast, there has been zero discovery in this case, Defendant has not even filed an Answer, and Defendant asks the Court to rule on the reasonableness of Defendant's conduct simply based on Defendant's unsupported arguments. In Defendant's single cited case that addressed the reasonableness of the time to honor a DNC request on a motion to dismiss, the court provided no explanation for finding—in contrast to the statutory language and prevailing view of the provision—there was an automatic 30-day safe harbor to honor such requests. *Orsatti v. Quicken Loans, Inc.*, No. 2:15–cv–09380–SVW–AGR, 2016 WL 7650574 (C.D. Cal. Sep. 12, 2016) (simply stating "The Court agrees with the Defendant" and § 64.1200(d)(3) "allows the defendant a reasonable tune to honor the request, not to exceed 30 days . . . [t]herefore such a call would be covered by the safe harbor provision of the FCC regulation"). The Court here should follow the much clearer rationale in *Boger*, *Martin*, and *Nece* and find there is no automatic 30-day safe harbor under § 64.1200(d)(3). Whether Defendant's decision to keep calling Mr. Scruggs after his unequivocal instructions to stop was reasonable must await discovery and briefing aimed at that topic.

quickly act on Plaintiff's request that the calling cease. Defendant's Motion should therefore be denied.

**E.     The TCPA regulations provide a private right of action for Defendant's violations of the Act, including under sub-section (d) of the implementing regulations.**

Defendant's actions have violated both sub-sections (c) and (d) of the implementing regulations of the TCPA. (First Am. Compl. ¶¶ 35, 36, ECF No. 22 (citing 47 C.F.R. § 64.1200(c)(2),(d)).) The TCPA is clear that residential telephone subscribers have a private right of action for violations of these regulations that were created to protect subscribers' privacy. 47 U.S.C. § 227(c)(5). Courts have repeatedly held that violations of § 64.1200(d) provide a private cause of action. *Boger*, 2020 WL 1033566, at *5; *Nece*, 2017 WL 2865047, at *2; *Dobronski v. Selectquote Ins. Servs.*, No. 2:19-cv-12798, 2020 WL 2744124, at *4 (E.D. Mich. May 27, 2020); *Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 WL 2558231, at *5–6 (D. Utah May 20, 2020); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324-25 (D. Mass. 2020) (collecting cases).

In *Barrett*, the court considered whether the regulatory requirement for maintaining internal DNC procedures provides a private right of action. *Barrett*, 2020 WL 2558231, at *6. The court first found that the plain language of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) are consistent. *Id.* at *7. In coming to this conclusion, the court noted that 64.1200(d)'s proscription against telemarketing calls without internal DNC procedures in place aligned with 227(c)'s prohibition against telemarketing calls where the caller had not established reasonable procedures to prevent calls that would violate the TCPA. *Id.* The court also noted that § 227(c)(1)(A) directed the FCC to look at alternative methods and procedures, including "industry-based or specific 'do not call' systems," in considering how to best protect subscriber's privacy rights, and then the FCC incorporated company-specific methods into § 64.1200(d). *Id.* Second, the court found that the

internal DNC registry "fits the purpose of § 227(c)" by providing an additional mechanism for subscribers to protect their privacy rights. *Id.* Finally, the court noted that "§ 64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights." *Id.* Based on these findings, the court concluded that § 64.1200(d) flows from § 227(c) of the TCPA and thus provides residential telephone subscribers a private right of action. *Id.*

Defendant relies on two cases, without providing any real analysis, to claim that there is no private right of action for violating the internal DNC rules under § 64.1200(d).[9] *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 Fed. App'x 165 (4th Cir. 2017) ; *Hurley v. Wayne Cnty. Bd. of Educ.*, No. 3:16-9949, 2017 WL 2454325 (S.D.W. Va. June 6, 2017) ("Hurley II"). *Hurley II* has no bearing on the claims in this case as the claims in that case involved "procedural and technical" standards for pre-recorded messages, such as identifying the entity making the message and revealing the phone number or address of that entity. *Hurley II*, 2017 WL 2454325, *3. The plaintiffs in that case brought claims under § 227(d) and under the corresponding regulations, § 64.1200(b). *Id.* at *3–4. Noting that § 227(d) does not mention a private cause of action, the court dismissed these claims. *Id.* at *4. In contrast to the *Hurley II* claims based on "procedural and technical standards," Mr. Scruggs has alleged Defendant violated the internal DNC list requirements under § 64.1200(d) which are much more aligned with the protecting Mr. Scruggs's privacy rights. *See Barrett*, 2020 WL 2558231, at *6.

Similar to *Hurley II*, *Worsham* also involved a claim based on the regulations requiring that telemarketers provide their names, the name of the entity on whose behalf of the call is made,

---

[9] Defendant mischaracterizes these regulations as under Section 227(d), whereas the internal DNC regulations appear under § 64.1200(d) as stated in Plaintiff's Amended Complaint. (*Compare* Mot. Dismiss 15, ECF No. 27 (claiming "violation[s] of the TCPA's 'internal' DNC rules" fall "under Section 227(d)" of the TCPA), *with* First Am. Compl. ¶ 35, ECF No. 22 (citing 47 C.F.R. § 1200(d).)

and a phone number or address for that entity. *Worsham*, 2016 WL 4592373, at *7. The court in that case noted that these specific regulations are more procedural and thus fit under the ambit of § 227(d), which does not contain an explicit private right of action. *Id.* While the *Worsham* court also stated that all of § 64.1200(d) are procedural requirements and thus "appear to fall under" § 227(d), the court did not really provide any analysis to support this assertion. *Id.* at *4. The court also noted that other courts have come to the opposite conclusion and have found that § 64.1200(d) is implemented under § 227(c) and thus contains a private right of action. *Id.* at *7 (collecting cases). While the Fourth Circuit has not yet spoken on this issue, multiple other courts have reached this conclusion. *Charvat v. NMP, LLC*, 656 F.3d 440, 443–44, 447–48 (6th Cir. 2011); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 654–55 (W.D. Tenn. 2020); *Dobronski*, , 2020 WL 2744124, at *4; *see Barrett*, 2020 WL 2558231, at *6 n.78 (finding a private cause of action exists, and citing cases from the Second, Third, Fifth, Sixth, and Eleventh Circuits so holding).

Without conclusive guidance from the Fourth Circuit, this Court should follow the clear rationale provided by *Barrett* and decisions from numerous other courts and find that § 64.1200(d) contains a private right of action and therefore Defendant's motion to dismiss Count One should be denied.

Mr. Scruggs has also clearly pleaded that he received more than one call from Defendant, especially so when viewing the allegations in the light most favorable to Mr. Scruggs and making reasonable inferences in his favor. *See Iqbal*, 556 U.S. at 678; *Skochin*, 413 F. Supp. at 480. As detailed in multiple factual assertions in his Amended Complaint, Mr. Scruggs states that he received multiple calls from callers who said they were associated with Defendant and tried to sell Mr. Scruggs the same product that Defendant sells. Defendant, reusing its same improper argument regarding Mr. Scruggs's pleading burden, then insinuates that Mr. Scruggs cannot prove that he

received more than one call from Defendant. Considering Mr. Scruggs's allegations, especially when taken as true and viewed in the light most favorable to him, and making reasonable inferences in his favor, the complaint clearly shows that Defendant made multiple telephone solicitation calls to him. Defendant has not challenged any of Mr. Scruggs's allegations as untrue. Thus, Mr. Scruggs has adequately pleaded that Defendant has also violated § 64.1200(c)(2) and Defendant's motion to dismiss Count One should be denied.

**F.**   **Mr. Scruggs's has adequately pleaded a claim under the VTPPA and he is entitled to relief under both the TCPA and the VTPPA.**

While Defendant merely states that Mr. Scruggs's VTPPA claim should also be dismissed because it "is based on the very same threadbare and conclusory allegations lacking in supporting facts as his TCPA claim," Defendant fails to provide any further analysis or authority to support its position. (Mot. Dismiss 18, ECF No. 27.) For the sake of brevity, Mr. Scruggs relies on his earlier argument to demonstrate that he has adequately pleaded a claim under the VTPPA, just as those arguments show he has given Defendant notice of his claims under the TCPA.

Mr. Scruggs is also entitled to recover under his VTPPA claim separately from his TCPA claim. In passing the TCPA, Congress explicitly stated that, with limited exception, the TCPA does not prohibit states from imposing more restrictive requirements on telephone solicitations. 47 U.S.C. § 227(f)(1). Courts in the Fourth Circuit have repeatedly found that plaintiffs can pursue claims under both the TCPA and analogous state law. *Boger*, 2020 WL 1033566, *6; *Worsham*, 2016 WL 4592373, at *2, *6, *7 (awarding plaintiffs statutory damages under both the TCPA and analogous state law for same calls). In *Boger,* the plaintiff sued the defendant under both the TCPA and a similar state law. *Boger*, 2020 WL 1033566, at *1. The defendant then moved to dismiss the plaintiff's state law claims on the theory that they would provide an impermissible double recovery. *Id.* at *6. In denying defendant's motion to dismiss the state law claims, the court

reasoned that the two laws are "similar, but distinct" as the state law allowed recovery of attorney's fees and contained a different statute of limitations. *Id.* The court also stated that "questions of recovery are far too premature without any finding on liability." *Id.* Similar to the state law at issue in *Boger*, Mr. Scruggs's VTPPA claim differs from the TCPA in that it allows for attorneys' fees and also is governed by a different statute of limitations than the TCPA. Va. Code Ann. § 59.1-515(C); *compare* Va. Code Ann. § 8.01-248 (providing two-year statute of limitations for VTPPA claims) *with* 28 U.S.C. § 1658(a) (providing four-year statute of limitations for TCPA claims). The VTPPA also targets different actions of telemarketers than the TCPA. *Compare* Va. Code Ann. § 59.1-514(A) (proscribing all telephone calls where the person called has stated he does not want to be called), *with* 47 C.F.R. § 64.1200(d)(3) (requiring telemarketers to follow procedures to maintain to internal DNC lists). The VTPPA also presumes joint liability for the sellers and the actual telephone solicitor, whereas the FCC has indicated that an aggrieved subscriber must prove a seller is vicariously liable if the seller did not physically place the call itself. *Compare* Va. Code Ann. § 59.1-514.1 (stating telemarketing call offering or advertising seller's goods is presumed to be made on behalf or for the benefit of the seller, thus rendering seller jointly and severally liable for the call), *with Dish Network*, 28 FCC Rcd. at 6584 ¶ 28 (finding seller may be vicariously liable for third party telemarketing calls, but only under federal common law principles of agency). Additionally, the statutory damages available in both the TCPA and VTPPA indicate strong and independent public policy goals on behalf of both the United States and the Commonwealth of Virginia in preventing unwanted telemarketing calls. Given the differences between the VTPPA and the TCPA and the early stage of this litigation, this Court should follow the rationale in *Boger*, find that Mr. Scruggs is entitled to pursue both his claims under the TCPA and VTPPA, and deny Defendant's motion to dismiss Count Two.

Defendant's single cited case to state otherwise, *Virginia ex rel. Jagdmann v. Real Time Int'l, Inc.*, No. 4:04CV125, 2005 WL 1162937 (E.D. Va. Apr. 26, 2015), is inapplicable. That case involved a government enforcement action asserting claims under § 227(f)(1) of the TCPA in addition to claims under the VTPPA. *Id.* at *2. The government plaintiff in that action *chose* not to bring a claim for damages under the VTPPA and rather chose to just pursue damages under the TCPA. *Id.* at *3 n.1. There was no ruling that the VTPPA claim could not be pursued alongside a TCPA claim. That is because in that case Judge Miller was deciding the matter on default judgment. *Id.* at *3. In contrast, Mr. Scruggs has pleaded claims under the TCPA and VTPPA, liability has not been established, so—even assuming for a moment that Plaintiff must choose between statutory remedies—no choice as to which remedy Plaintiff prefers is ripe. This Court should follow the more analogous rationale in *Boger* and deny Defendant's motion to Dismiss Count Two.

Moreover, again assuming that Defendant is correct that Plaintiff cannot prevail on both his TCPA and VTPPA claims, there is nothing that prevents Plaintiff from pleading causes of action that seem on their faces to be incongruent. Rule 8 expressly permits it, noting that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the *alternative or different types* of relief." FED. R. CIV. P. 8(a)(3) (emphasis added). As this Court has further explained:

> Federal Rule of Civil Procedure 8 allows a party to "set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Further, although a party may not receive duplicative recovery, "a plaintiff has the right to plead alternative theories of recovery based on entirely separate provisions of [a contract]." SourceOne bases its breach of warranty claim against ESI on the express warranties in the ESI agreements. It bases its breach of contract claim, on the other hand, on both the warranties and other obligations in the ESI agreements. Further, a plaintiff need not use specific words to indicate that it is pleading an alternative claim.

*Sourceone, Inc. v. ESI, Inc. of Tenn.*, No. 3:19-cv-907, 2020 WL 4283927, at *2–3 (E.D. Va. July 27, 2020). Regardless of whether Plaintiff may be put to a choice of claims or remedies as the case progresses, there is no basis to dismiss what Defendant characterizes as a claim that would allow a double recovery at the pleadings stage. *See id.* (refusing to dismiss what defendant argued was a duplicative claim); *see also In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F. Supp. 3d 418, 443 (E.D. Va. 2019) (refusing to dismiss inconsistent claim pleaded in the alternative).

Defendant also improperly attempts to raise an affirmative defense to the VTPPA claim by arguing it complied with federal law. (Mot. Dismiss 20, ECF No. 27.) Even assuming Defendant is correct and that this is actually a defense to Plaintiff's state-law claims, raising such an affirmative defense is improper in a motion to dismiss as Defendant bears the burden of proving this defense. *See Carper v. Skinner*, No. 2:14-cv-12114, 2015 WL 13626362, at *4–5 (S.D. W. Va. Jan. 16, 2015) (citing in part *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). Defendant has not even filed an Answer. Rather, in its Motion to Dismiss, Defendant reiterates its mistaken assertion that its actions fall within the imagined TCPA 30-day safe-harbor and implies that eight days to honor Mr. Scruggs's request to stop calling complies with federal regulations as a matter of law. This is simply rehashing Defendant's earlier failed arguments, which Mr. Scruggs has addressed above. Since this affirmative defense relies on conclusions of fact and law that contradict Plaintiff's well-pleaded allegations and ask the Court to make factual findings at the pleadings stage, Court should reject these arguments when ruling on Defendant's Motion.

**G.    Mr. Scruggs has adequately pleaded Defendant's willfulness and it is premature to determine this question of fact.**

Willfulness is generally a question of fact, rarely appropriate for even summary judgment, and therefore better left for the jury to decide. *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 846 (E.D. Va. 2017) (reaching this conclusion in considering willfulness under the Fair Credit

Reporting Act); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 722 (S.D.N.Y. 2013) (refusing to grant summary judgment on willfulness in TCPA case). Under both the TCPA and VTPPA, the question of Defendant's willfulness is not a separate claim but, rather, determines the appropriate award of damages for Mr. Scruggs. 47 U.S.C. § 227(c)(5); VA. CODE ANN. § 59.1-515(B). Under both statutes, there has to be an underlying violation before making a determination of whether the defendant's conduct was willful. Mr. Scruggs has pleaded that he received a slew of unwanted solicitation calls from Defendant in a short time period, and he repeatedly told the callers to stop contacting him. These allegations are sufficient at this early stage in the litigation to allege that Defendant's conduct was willful. Defendant's cited cases do not indicate otherwise. *See Syed v. Mohammad*, No. 1:15-cv-01332, 2016 WL 8731783, at *1 (E.D. Va. Apr. 1, 2016) (dismissing counterclaims for fraud, illegality, involving "incomprehensible and irrelevant allegations" and never mentioning "willfulness"); *Sterling v. Securus Techs., Inc*., No. 3:18-cv-1310, 2020 WL 2198095, *6 (D. Conn. May 6, 2020) (explaining that since the court had already dismissed plaintiff's "TCPA underlying claims," it was also dismissing "claims" of knowing and willful violations).

Mr. Scruggs alleges sufficient detail for the Court to conclude that he has adequately pleaded that Defendant acted willfully. First, Mr. Scruggs alleges that Defendant called him again and again after Mr. Scruggs stated he wished the calls to stop. (First Am. Compl. ¶¶ 15–23, ECF No. 22.) He further alleges:

27. Defendant's violations described above were willful.

28. The TCPA is a long-standing statute, having been enacted in 1991. Defendant has had three decades since its enactment to establish compliant calling procedures.

29. Defendant has access to the publications of the Federal Government, those of other regulators, trade organizations, and decisions of various courts outlining

the TCPA's various protections. This information would permit Defendant adequate information to establish compliance procedures.

30. Defendant also has access to attorneys, both in-house and outside CHW, to provide advice and interpretations of the TCPA and permit CHW to develop compliant procedures.

31. These same allegations of willful conduct apply to CHW's failure to abide by the VTPPA in continuing to call Plaintiff. . . .

38. CHW willfully and/or knowingly violated these regulations. . .

45. CHW willfully violated the VTPPA.

(*Id.* ¶¶ 27–31, 45.)

Multiple courts have considered arguments like Defendant makes here on willfulness, and have declined to dismiss even against less-detailed allegations than Plaintiff provides. *Keifer v. HOSOPO Corp.*, No. 3:18-cv-1353-CAB-KSC, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) ("The FAC alleges, that 'the foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA . . . ,' and the Court takes this allegation as true for purposes of the present motion.") (citation omitted); *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 WL 431148, at * 4 (N.D. Cal. Feb. 2, 2015) (finding allegations that "defendant, using an ADTS, sent text message to plaintiff in knowing and/or willful violation of the TCPA" sufficient to state a claim); *Pacleb v. Cops Monitoring*, No. 2:14-cv-01366-CAS (JCx), 2014 WL 3101426, at * 4 (C.D. Cal. July 7, 2014) (finding allegation that "defendant's conduct constituted multiple knowing and/or willful violations of the TCPA" sufficient to withstand a motion to dismiss); *Fox v. Asset Acceptance, LLC*, No. 13-cv-0922 DMS (BGS), 2013 WL 12076476, (S.D. Cal, Oct. 30, 2013); *Maier v. J.C. Penney Corp., Inc.*, No. 13cv0163-IEG (DHB), 2013 WL 3006415, at *4 (S.D. Cal. June 13, 2013) (denying motion to dismiss); *see also Schaevitz v. Braman Hyundai, Inc*., 437 F. Supp. 3d 1237, 1255 (S.D. Fla. 2019) ("Because the TCPA speaks

to a remedy which may be awarded in the Court's discretion upon finding that Defendant acted "willfully" or "knowingly," it would be inappropriate at the motion to dismiss stage to exclude the possibility of the Court later making such a finding based on additional facts to support Plaintiff's allegations."); *Brown v. Acct. Control Tech., Inc.*, No. 0:13-62765-CIV, 2015 WL 11181947, at *4 (S.D. Fla. Jan. 16, 2015) (reviewing evidence of a willful violation of the TCPA at the close of discovery and on a motion for summary judgment). This Court should find that Plaintiff has adequately pleaded that Defendant acted willfully, and that question should not be resolved on a motion to dismiss since willfulness is not its own independent claim.

## V.    CONCLUSION

For the above reasons, Mr. Scruggs respectfully requests this Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint in its entirety. In the alternative, Mr. Scruggs asks this Court to grant him leave to amend his complaint to address any deficiencies the Court finds in his pleadings.

Respectfully Submitted,

**JIM SCRUGGS,**

By:  /s/ *Kevin Dillon*
Kevin A. Dillon (VSB # 93475)
CONSUMER LITIGATION ASSOCIATES, PC
626 E. Broad Street, Suite 300
Richmond, VA 23219
Telephone: 804-905-9904
Facsimile: 804-905-9902
Email: kevin@clalegal.com

Craig C. Marchiando (VSB # 89736)
CONSUMER LITIGATION ASSOCIATES, PC
763 J. Clyde Morris Blvd, #1a
Newport News, VA 23601
Telephone: 757-930-3660
Facsimile: 757-930-3662

Email: craig@clalegal.com

*Counsel for Plaintiff*