**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| JIM SCRUGGS )<br><br>*Plaintiff*, )<br><br>v. )<br><br>CHW GROUP, INC., and HOME )<br>WARRANTY ADMINISTRATORS, INC., )<br><br>*Defendant*. ) | Case No. 2:20-cv-00048-RBS-RJK |

**DEFENDANT CHW GROUP, INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.      Plaintiff Has Not Pled Any Facts Supporting Direct TCPA Liability ............................. 2

    a.      Plaintiff Does Not Allege that CHW "Physically" Placed the Calls .................... 2

    b.      Plaintiff Fails to Distinguish CHW's Direct Liability Authorities ...................... 7

    c.      Plaintiff's Cited Authorities on Direct TCPA Liability are Inapposite ................ 9

II.     Plaintiff Concedes CHW's Vicarious TCPA Liability Arguments ................................ 11

III.    Plaintiff's Arguments Regarding His TCPA DNC Claims Are Also Unavailing .......... 13

IV.     Plaintiff's Arguments Regarding His VTPPA Claim Are Likewise Unavailing............. 17

V.      Plaintiff Has Not Met His Burden to Plead Article III Standing .................................... 19

VI.     Plaintiff Concedes that His Complaint Should Be Dismissed With Prejudice ............... 20

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018) .................................................................6, 7

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
917 F.3d 206 (4th Cir. 2019) ......................................................................................7

*Alvarez v. Lynch*,
828 F.3d 288 (4th Cir. 2016) ...........................................................................12, 14, 20

*Aronson v. Generation Mortg. Co.*,
2014 WL 641622 (W.D. Pa. Feb. 19, 2014) ...............................................................9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................7, 11, 12, 17

*Barrett v. Vivint, Inc.*,
2020 WL 2558231 (D. Utah May 20, 2020)..................................................................16

*Benzion v. Vivint, Inc.*,
2014 WL 11531368 (S.D. Fla. Jan. 17, 2014) ...............................................................17

*Boger v. Citrix Systems*,
8:19-cv-01234-PX (D.Md.) .............................................................................16, 18, 19

*Bradford v. HSBC Mortg. Corp.*,
280 F.R.D. 257 (E.D. Va. 2012) ................................................................................18

*Braver v. NorthStar Alarm Servs., LLC*,
2019 WL 3208651 (W.D. Okla. July 16, 2019), *amended on denial of reconsideration
on other grounds by*, 2019 WL 5722207 (Nov. 5, 2019) ..................................................15, 16

*Burdge v. Ass'n Health Care Mgmt., Inc.*,
2011 WL 379159 (S.D. Ohio Feb. 2, 2011)..................................................................15

*Chamblee v. Old Dominion Sec. Co.*,
2014 WL 1415095 (E.D. Va. Apr. 11, 2014) .........................................................12, 14, 20

*Charvat v. NMP*,
656 F.3d 440 (6th Cir. 2011) ....................................................................................16

*Christopher Seri v. Crosscountry Mortg., Inc.*,
2016 WL 5405257 (N.D. Ohio Sept. 28, 2016)...............................................................7

*Coleman v. Duke*,
867 F.3d 203 (D.C. Cir. 2017) ..................................................................................12

*Coleman v. Johnson*,
2014 WL 116150 (D.D.C. 2014) ................................................................................12

**TABLE OF AUTHORITIES**
(Continued)

Page

*Cunningham v. Politi*,
  2019 WL 2519702 (E.D. Tex. Apr. 26, 2019), *report and rec. adopted*, 2019 WL
  2526536 (June 19, 2019) ............................................................................................. 7, 18

*Dobkin v. Enterprise Fin. Group, Inc.*,
  2014 WL 4354070 (D.N.J. Sept. 3, 2014) ............................................................................ 7

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ............................................................................................... 5

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ........................................................................................................... 18

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ..................................................................... 7

*Gulden v. Consol. World Travel Inc.*,
  2017 WL 3841491 (D. Ariz. Feb. 15, 2017) .................................................................. 7, 13

*Hernandez v. Select Portfolio, Inc.*,
  2015 WL 3914741 (C.D. Cal. June 25, 2015) .................................................................... 11

*Hicks v. Alarm.com*,
  Case No. 1:20-cv-532 (E.D.Va. Aug. 6, 2020) .......................................................... passim

*Hurley v. Messer*,
  2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018) ............................................................ passim

*In re Dish Network, LLC*,
  28 FCC Rcd. 6574 (2013) ..................................................................................................... 6

*In re Rules and Regs. Implementing the Tel. Consumer Prot. Act*,
  30 FCC Rcd. 7961 (2015) ..................................................................................................... 8

*Jennings v. Cont'l Serv. Grp., Inc.*,
  239 F. Supp. 3d 662 (W.D.N.Y. 2017) .......................................................................... 9, 10

*Judge v. Quinn*,
  612 F.3d 537 (7th Cir. 2010) ............................................................................................. 12

*Kruskall v. Sallie Mae Serv., Inc.*,
  2016 WL 1056973 (D. Mass. Mar. 14, 2016) ...................................................................... 7

*Laccinole v. Appriss, Inc.*,
  2020 WL 1848088 (D.R.I. Apr. 13, 2020) ......................................................................... 14

*Masters v. Wells Fargo Bank S. Cent.*,
  2013 WL 3713492 (W.D. Tex. July 11, 2013) ................................................................... 19

*Meeks v. Buffalo Wild Wings, Inc.*,
  2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ..................................................................... 7

*Melito v. Am. Eagle Outfitters, Inc.*,
  2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .................................................................. 7, 9

iii

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Mims v. Arrow Financial Services*,
    132 S.Ct. 740 (2012) ................................................................................ 19

*Pasco v. Protus IP Sols., Inc.*,
    826 F. Supp. 2d 825 (D. Md. 2011) .......................................................... 19

*Randall v. U.S.*,
    30 F.3d 518 (4th Cir. 1994) ...................................................................... 17

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
    713 F.3d 175 (4th Cir. 2013) ...................................................................... 5

*Schwartz v. Wellin*,
    2014 WL 12637912 (D.S.C. Aug. 14, 2014) ....................................... 12, 14

*Sheski v. Shopify (USA) Inc.*,
    2020 WL 2474421 (N.D. Cal. May 13, 2020) ............................... 2, 3, 7, 9

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    30 F. Supp. 3d 765 (N.D. Ill. 2014) ....................................................... 5, 7

*Smith v. Truman Rd. Dev., LLC*,
    2020 WL 2044730 (W.D. Mo. Apr. 28, 2020) .......................................... 17

*Sterling v. Securus Techs., Inc.*,
    2020 WL 2198095 (D. Conn. May 6, 2020) .............................................. 14

*Stratton v. Mecklenburg County Dep't of Soc. Serv.*,
    521 F.App'x. 278 (4th Cir. 2013) .............................................................. 11

*SunTrust Mortg., Inc. v. Nationwide Equities, Corp.*,
    2012 WL 4953120 (E.D. Va. Oct. 16, 2012) ............................................ 11

*Syed v. Mohammad*,
    2016 WL 8731783 (E.D. Va. Apr. 1, 2016) .............................................. 17

*Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*,
    739 F.2d 1472 (10th Cir. 1984) ................................................................. 18

*Veney v. Wyche*,
    293 F.3d 726 (4th Cir. 2002) .................................................................... 11

*Wallack v. Mercantile Adjustments Bureau, Inc.*,
    2014 WL 1515852 (E.D. Mich. Apr. 18, 2014) .......................................... 7

*Warciak v. Subway Restaurants, Inc.*,
    2019 WL 978666 (N.D. Ill. Feb. 28, 2019) ................................................ 7

*Wilson v. PL Phase One Operations L.P.*,
    422 F. Supp. 3d 971 (D. Md. 2019) .......................................................... 15

*Wolfkiel v. Intersections Ins. Servs. Inc.*,
    303 F.R.D. 287 (N.D. Ill. 2014) ............................................................... 17

iv

## TABLE OF AUTHORITIES
### (Continued)

Page

*Worsham v. Travel Options, Inc.*,
  2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F.App'x 165 (4th Cir. 2017) ..14, 15, 16

*Zelma v. Burke*,
  2017 WL 58581 (D.N.J. Jan. 4, 2017) ..................................................................7

*Zhu v. DISH Network, LLC*,
  808 F. Supp. 2d 815 (E.D. Va. 2011) (O'Grady, J.) .............................................18

## STATUTES

47 U.S.C. § 227(b) .....................................................................................................3, 10

47 U.S.C. § 227(b)(3) .......................................................................................................14

47 U.S.C. § 227(c) ....................................................................................................passim

47 U.S.C. § 227(c)(5) ................................................................................................13, 14

47 U.S.C. § 227(d) ............................................................................................13, 15, 16

## OTHER AUTHORITIES

47 C.F.R. § 64.1200 .................................................................................................15, 17

47 C.F.R. § 64.1200(a) ......................................................................................................15

47 C.F.R. § 64.1200(b) ......................................................................................................15

47 C.F.R. § 64.1200(c) ......................................................................................................15

47 C.F.R. § 64.1200(c)(2) ..................................................................................................13

47 C.F.R § 64.1200(d) ......................................................................................14, 15, 16

47 C.F.R. § 64.1200(d)(3) ...........................................................................................16, 17

47 C.F.R. § 64.1200(f)(14) ................................................................................................13

22 Am. Jur. 2d Damages § 165 ..........................................................................................18

## RULES

Fed. R. Evid. 201 ...............................................................................................................11

Fed. R. Civ. P. 8 ..........................................................................................................11, 12

Fed. R. Civ. P. 12 ................................................................................................................9

Fed. R. Civ. P. 12(b)(1) .........................................................................................3, 10, 20

Fed. R. Civ. P. 12(b)(2) .....................................................................................................10

Fed. R. Civ. P. 12(b)(6) ..............................................................................................passim

## INTRODUCTION

In his Response (Dkt. 32, "Response" or "Resp.") to CHW's Motion to Dismiss (Dkt. 27, "Motion"), Plaintiff doubles down on the inconsistent threadbare allegations and legal conclusions in his First Amended Complaint (Dkt. 22, "FAC") in a futile attempt to hold CHW liable under the TCPA and its Virginia analog, the VTPPA.  Federal pleading standards and Article III require more, however, and therefore the Court should dismiss the entire FAC with prejudice.

Indeed, beyond mostly regurgitating or recasting the conclusory allegations in his pleading and ignoring or mischaracterizing CHW's cited authorities, Plaintiff's Response offers little argument and thin legal authority in opposing CHW's Motion.  And what little it does offer misses the mark.  For example, despite having had the benefit of CHW's previous dispositive motion and a chance to amend his fatally flawed original complaint on these issues, Plaintiff does not argue, let alone allege, that CHW itself—as opposed to some unidentified third party "representative"—*physically placed* the phone calls at issue, as is plainly required to state a plausible claim for direct TCPA liability.  Nor does Plaintiff argue or allege that CHW had any *control* over any responsible third party who did, as is plainly required to state a plausible claim for vicarious TCPA liability, and instead seemingly concedes this point.  These failings alone warrant dismissal of the entire FAC.[1]

Plaintiff's Response also, among other things: (i) improperly relies on new "facts" not alleged anywhere in the FAC; (ii) ignores, misconstrues and/or misstates the law and CHW's arguments as to the multiple other reasons why Plaintiff's TCPA DNC claims fail; (iii) spills little ink in defending CHW's arguments as to why his analog VTPPA claim, which he seemingly admits arises from the same operative facts and seeks substantially the same (if not identical) relief as his TCPA DNC claims, should not be dismissed at this stage for being improperly duplicative; (iv)

---

[1] Plaintiff's VTPPA claim is based on the same conclusory allegations devoid of supporting facts as his TCPA claims and, thus, likewise fails and should be dismissed for the same reasons.

explain why the sparse and conclusory "factual" allegations in the FAC are sufficient for Article III

standing; and (v) does not address, thereby conceding, CHW's request for a dismissal with prejudice.

All told, Plaintiff's Response does not refute any of the well-supported grounds for relief

presented by CHW's Motion.  Consequently, the Court should grant the Motion.

## ARGUMENT

### I.   Plaintiff Has Not Pled Any Facts Supporting Direct TCPA Liability.

In a failed attempt to overcome CHW's plain (and now unconverted) demonstration to the

contrary in its Motion, Plaintiff's Response boldly proclaims that Plaintiff has "adequately pleaded

that Defendant initiated the calls" at issue and "it is nearly a foregone **conclusion** that Defendant is

responsible for the unwanted calls that [Plaintiff allegedly] received, either directly **or** vicariously."

Resp. at 5-6, 9 (emphasis added).  However, Plaintiff's bald conclusion, without any factual support,

is insufficient to survive dismissal.  As shown below, Plaintiff's failures here are multi-faceted:

#### a.   Plaintiff Does Not Allege that CHW "Physically" Placed the Calls.

As CHW demonstrated in its Motion, direct TCPA liability applies only to those persons or

entities who "tak[e] the steps necessary to **physically place**" a phone call.  Motion at 8 (quoting

*Sheski*) (emphasis added).  This rule has been widely accepted by courts in the Fourth Circuit and

elsewhere, including in this District.  *See, e.g., id.* at 8-11 (citing, *inter alia*, *Monitronics*, *Hurley* and

*Aaronson*).  *See also Hicks v. Alarm.com*, Case No. 1:20-cv-532, (E.D. Va. Aug. 6, 2020) (O'Grady,

J.), Dkt. 27 at 8 (quoting *Sheski* with approval).[2]  Thus, federal courts across the country have

consistently dismissed threadbare TCPA complaints, like Plaintiff's, that fail to provide sufficient

non-conclusory facts suggesting that the defendant—and not some unidentified third party—

physically placed the calls at issue.  *Id.*  Such is quite true here, and it alone dooms Plaintiff's FAC.

---

[2] Since it is not yet available on Westlaw or Lexis, Judge O'Grady's opinion in *Hicks v. Alarm.com* is attached hereto and further cited herein as **Exhibit A.**

Judge O'Grady's recent opinion in the *Hicks* case, *supra*, is further instructive on this point. Like Plaintiff in the present case, the plaintiff there alleged in conclusory fashion that he received two unsolicited text messages and one phone call on his cell phone "sent by Defendant" promoting "home alarm services"—*i.e.,* the same generic type of products and services offered by that defendant—despite his cell number being registered on the National "Do-Not-Call" ("DNC") list. Exhibit A at 2, 9. However, in stark contrast to Plaintiff's FAC here, the plaintiff there also alleged in his complaint, *inter alia*, (i) the specific phone number from which the texts and calls supposedly originated; and (ii) that when he called the call back number provided by the caller, "the person who answers identifie[d] the company as Alarm.com." *Id*. at 7-8.

Despite those allegations, however, Judge O'Grady dismissed the entire complaint in *Hicks* under Rules 12(b)(6) <u>and</u> 12(b)(1), noting that "[w]hile the Court accepts [p]laintiff's assertion regarding the Alarm.com representative as true, it need not construe the [c]omplaint so liberally in [p]laintiff's favor as to determine that the offered support actually corroborates the claim." *Id*. at 7-8. Thus, ruling the plaintiff there failed to state a plausible direct TCPA liability claim and applying the *Sheski* and *Hurley* cases cited by CHW here (*see* Motion at 8-9), Judge O'Grady ultimately found that (i) "there [we]re no facts [alleged] detailing Alarm.com's involvement in [physically] ***placing*** any calls" or texts; and (ii) "[t]he alleged text messages promoted 'home alarm services,' but labeling the sender of those texts as 'Defendant' [w]as [merely] conclusory on th[o]se facts." Exhibit A at 8-9 (emphasis in original).[3]  Thus, *Hicks* further supports dismissal of Plaintiff's entire FAC.

---

[3] At this point in the opinion, Judge O'Grady was ruling on plaintiff's claim under Section 227(b) of the TCPA, which involves autodialers and artificial/prerecorded voice calls and is not alleged here. However, the plaintiff there also brought a DNC claim under Section 227(c), which is the basis of Plaintiff's TCPA claim here, as to which Judge O'Grady also ruled that "[g]iven the infirmities in the underlying [c]omplaint [as to the plaintiff's Section 227(b) claim], there [wa]s also insufficient basis to assign plausible [direct] liability to Defendant under § 227(c)." *Id*. at 10.  And, as discussed below (*see* Section IV., *infra*), Judge O'Grady also ruled that the plaintiff's VTPPA claim in *Hicks* "must fail at this stage for similar reasons as the parallel TCPA claim." Ex. A at 10.

In the present case, Plaintiff's FAC is just as fatally flawed and ripe for dismissal as the complaint Judge O'Grady dismissed in *Hicks*, if not more so considering it represents Plaintiff's second failed attempt to state a plausible TCPA claim against CHW.  Indeed, Plaintiff does not argue in his Response that CHW took any "steps to physically place" any calls, as is required to plead direct TCPA liability, much less address this simple but fundamental legal maxim or show where such details are alleged in his FAC.  The reason he does not is simple:  ***no such facts were pled***.

Rather, like in *Hicks*, Plaintiff's FAC merely alleges in conclusory fashion that he received a handful of calls from an unnamed person (or persons) who supposedly "identified himself as associated with CHW" somehow and "attempted to sell a home warranty" to him.  FAC ¶¶ 14, 16-18-22 (emphasis added).  Yet, while he also concedes in his brief (albeit almost in passing via footnotes) that he is not alleging vicarious liability (*see* Resp. at 12, n.3 & 15, n.5), Plaintiff's FAC likewise leaves open the possibility that "someone acting on CHW's behalf initiated" those calls.  FAC ¶ 23.  As CHW demonstrated, however, Plaintiff's FAC is similarly devoid of any facts detailing CHW's involvement in physically placing any calls, as is necessary to plead a plausible claim for direct TCPA liability, and it still provides virtually no details about the calls at issue despite being his second bite at the apple.  *See* Motion at 3-5, 9-10.  Thus, the Court should follow Judge O'Grady's well-reasoned decision in *Hicks* and dismiss the entire FAC in this case on this basis.

Plaintiff's Response does nothing to refute this and, tellingly, Plaintiff does not cite a single opinion from a Fourth Circuit court in support of his direct TCPA liability arguments.  Instead, and at best, Plaintiff merely concludes in his brief that "the callers identified themselves as representatives of Defendant, *and* specified that the calls were to try to sell [him] a [type of] product that Defendant sells."  Resp. at 13 (emphasis in original).  This fails on multiple levels.  For starters,

these allegations do not appear in the FAC[4] and "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). Consequently, the Court should reject Plaintiff's argument as out of hand.

Moreover, Plaintiff's unsupported argument on this front is fundamentally the same as the one Judge O'Grady just rejected in *Hicks*, as discussed above. Even assuming *arguendo* that a caller "identified himself as associated with" CHW, and despite Plaintiff having had the opportunity to amend his previous faulty pleading, Plaintiff's FAC still utterly lacks any facts detailing ***CHW's involvement in physically placing any calls***. Further, as CHW previously noted, and like Judge O'Grady apparently recognized in *Hicks*, that the caller here allegedly offered the same type of product that CHW also sells or indicated he was "associated" with CHW in some fashion does not allow for a plausible inference that CHW ***itself*** physically placed any of the at-issue calls here. *See* Motion at 10 (citing *Smith*, *Wick*, and *Aaronson*). In fact, Plaintiff concedes this, noting that "many businesses use third-party vendors to make marketing calls for them." Resp. at 14. *See also* Motion at 10 (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014) ("[A] seller generally does not 'initiate' calls [within the meaning of the TCPA for direct liability purposes] placed by [alleged] third-party telemarketers.")). The FCC, the agency responsible for

---

[4] At most, Plaintiff ***concludes*** in ***one sentence*** of his FAC that the callers were "CHW's representatives" (¶ 26), but he does not allege the callers ever *identified* themselves as "representatives" of CHW. Nor does Plaintiff allege the callers tried to sell him a *CHW* product, only "a home warranty." Plaintiff does not even allege in the FAC what products CHW sells, also saving that for a footnote (*see* Resp. at 2, n. 1). Regardless, the only plausible inferences to be drawn from the allegations are that Plaintiff received calls from a third party broker attempting to sell <u>any</u> home warranty or some scam artist improperly using CHW's name to bilk victims out of money.

promulgating TCPA regulations, agrees. *See In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583, ¶ 26 (2013) (ruling that someone who "initiates" a call within the meaning of the TCPA and is subject to direct TCPA liability "generally does not include persons or entities … that might merely have some role, however minor, in the causal chain that results in the making of a telephone call.").[5]

Additionally, while Plaintiff notes that CHW "has not provided any facts [in its Motion] that even suggest the calls did not originate from Defendant" (Resp. at 9), this is a red herring. CHW like any other defendant is not required to deny (nor, for the reasons noted above among others, is it proper for CHW to disprove) any particular allegations on a Rule 12(b)(6) motion to dismiss, no matter how misstated or false they may be. In any event, it is ***Plaintiff's burden*** at this stage to plead specific non-conclusory facts supporting a plausible direct TCPA liability claim, ***without the benefit discovery***, to avoid dismissal. *See* Motion at 5-6, 10 & fn. 5 and 8. He plainly has not done so, and even admits that he has no idea "what entity actually initiated the calls to him."   Resp. at 13.

Lastly, relying on a handful of cherry-picked decisions, Plaintiff posits that: (i) requiring any plaintiff to plead facts indicating that a defendant took the steps necessary to physically place the calls at issue is a "hyper-technical interpretation" of the TCPA; (ii) "it is enough for Plaintiff to allege that either the Defendant or someone acting on its behalf placed the calls to Plaintiff to survive Defendants' Motion" without more facts; and (iii) this Court's decision in *Aaronson v. CHW Grp., Inc.* (*see* Motion at  9-10), among several Fourth Circuit and other district court decisions cited by CHW on this issue, are merely "outlier" opinions. Resp. at 1-2, 9-10, 14. Plaintiff is wrong.

Not only does Plaintiff misconstrue CHW's directly on-point authorities on direct liability as discussed below (*see* Section I.b., *infra*), but also this Court's recent decision in *Hicks*, which is

---

[5] *See also Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (dismissing where, *inter alia*, plaintiff baldly asserting that the caller was a "representative of defendant" without more was insufficient for direct TCPA liability).

likewise directly on-point and presents the very same issues as are currently at bar, belies Plaintiff's argument.  Plaintiff's argument is also contrary to well-established law.  Indeed, myriad courts in and beyond the Fourth Circuit have recognized "[m]erely alleging that [CHW] 'made' or 'initiated' [a] call"—which is all Plaintiff has done here—"is not sufficient to allege a [direct] TCPA [liability] claim" and have routinely dismissed cases at the pleadings stage on this basis.  *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019); *see also* Motion at 8-11 (citing *Sheski, Smith, Melito, Vessal, Hurley, Aaronson, Cunningham, Hurley, Childress, Sepehry-Fard*).[6] And lest there be any lingering doubt, *Aaronson* and *Hicks*, among the many cases cited in the Motion and unlike the ones Plaintiff selected for his Response, represent the ***overwhelming majority view*** and are not "outliers" or "hyper-technical interpretations" of the TCPA.[7]  Thus, this Court should follow the vast weight of authority and dismiss Plaintiff's FAC on this basis.

### b.   Plaintiff Fails to Distinguish CHW's Direct Liability Authorities.

Plaintiff's attempt to distinguish a handful of the many directly on-point authorities cited by CHW on this issue (*see* Resp. at 10-13, 15 & fn. 4) is also unavailing for a number of reasons:

For starters, each case CHW cited represents an instance where, as here, a court determined there were insufficient (or, in this case, zero) facts suggesting that the defendants took any "steps to physically place" the calls or texts at issue, as is required to plausibly state a claim for direct TCPA

---

[6] *See also ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019) (pleadings require "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation'" and "[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice.")  (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[7] *See, e.g., Wallack v. Mercantile Adjustments Bureau, Inc.*, 2014 WL 1515852, at *3 (E.D. Mich. Apr. 18, 2014); *Dobkin v. Enterprise Fin. Group, Inc.*, 2014 WL 4354070, at *3 (D.N.J. Sept. 3, 2014); *Kruskall v. Sallie Mae Serv., Inc.*, 2016 WL 1056973, at *3-4 (D. Mass. Mar. 14, 2016); *Christopher Seri v. Crosscountry Mortg., Inc.*, 2016 WL 5405257, at *4 (N.D. Ohio Sept. 28, 2016); *Zelma v. Burke*, 2017 WL 58581, at *4 (D.N.J. Jan. 4, 2017); *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017); *Abante Rooter & Plumbing*, 2018 WL 288055, at *4; *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3-5 (N.D. Cal. Mar. 28, 2018); *Warciak v. Subway Restaurants, Inc.*, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019).

liability.  *See* Motion at 8-11.  Indeed, Judge Ellis' decision in *Aaronson* confirms that, "[i]n order to establish that a defendant is directly liable under the TCPA, … the plaintiff must [plead] that the defendant actually, physically initiated the telephone call at issue" and "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls to plaintiff's cellular phone." 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (citing various cases).  That Plaintiff does not refute or even address this is quite telling.

Moreover, the issue in *Aaronson* was not whether the plaintiff adequately pled that "the defendant made the calls" as Plaintiff suggests (Resp. at 12) but, rather, whether he pled facts "that would tend to identify defendant as the party that ***actually, physically took the steps to place the calls*** to plaintiff's phone." 2019 WL 8953349, at *2 (emphasis added).  The same is true for *Hurley*, which Judge O'Grady cited with approval in *Hicks*, where the court dismissed one defendant where there were no facts alleged in the complaint that defendant "***physically placed*** the telephone calls at issue"; and it denied the plaintiff's request for discovery in order to support her claims against that defendant.  *Hurley v. Messer*, 2018 WL 4854082, at *3-4 (S.D.W. Va. Oct. 4, 2018).  But the *Hurley* court declined to dismiss other defendants only because the plaintiff also alleged they "knew about the illegal conduct, had a right to control the conduct but, nevertheless, permitted the robocalls to be broadcast through their assigned telephone numbers" on their calling platform.  *Id.*  Applying FCC rulings, therefore, the *Hurley* court found the remaining defendants were "so involved in placing the calls that [they] could be deemed to have initiated them" within the meaning of the TCPA and could be subject to direct TCPA liability.  *Id.* (quoting *In re Rules and Regs. Implementing the Tel. Consumer Prot. Act*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015)).  As noted above, Plaintiff's FAC contains no such facts, and thus *Aaronson* and *Hurley* are directly on point and support dismissal.

Finally, though relegated to a brief mention in a footnote (*see* Resp. at 15, fn. 4), Plaintiff's

Response largely ignores *Melito,* which was cited with approval by Judge Ellis in *Aaronson,* and *Sheski,* which was cited with approval by Judge O'Grady in *Hicks.*  *See* Motion at 8-9.  This is likewise telling.  In *Melito*, the court held that (i) "[c]onclusory assertions [the defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement" and (ii) "[b]ecause [p]laintiffs d[id] not plead [that the defendant] 'made,' i.e., physically placed or actually sent, the [at issue] text messages, the [complaint] fail[ed] to state a claim."  *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015).[8] That is all Plaintiff has done here.  In *Sheski*, the court applied the same 2015 FCC ruling discussed above and held that the factual allegations pled in the complaint there—which were far more extensive than what Plaintiff's diminutive FAC contains here—"d[id] not lead to the inference that Shopify [physically] sent or was directly involved in sending the text messages at issue" to be subject to direct TCPA liability.  *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *3 (N.D. Cal. May 13, 2020).  Again, such is true in this case and Plaintiff does not demonstrate otherwise in his Response.

### c.   Plaintiff's Cited Authorities on Direct TCPA Liability are Inapposite.

As noted above, Plaintiff does not cite any opinions from Fourth Circuit courts and, instead, relies on four cherry-picked authorities in support of his direct TCPA liability arguments.  *See* Resp. at 9-10 (citing *Jennings*, *Tickling Keys*, *Charvat*, and *Aronson*).  Nevertheless, Plaintiff's scant authorities in his Response do not save his fatally flawed FAC from dismissal under Rule 12, either.

To begin, in contrast to CHW's many cited authorities, none of Plaintiff's cited authorities even discuss direct TCPA liability or the standards for pleading it, nor did any of the defendants in those cases raise a direct TCPA liability challenge like CHW did.  Indeed, the only issue in *Jennings*

---

[8] Plaintiff similarly relegates *Childress*—also cited in CHW's Motion and with approval by Judge Ellis in *Aaronson* on the issue of direct TCPA liability—to the same footnote in his brief.  But *Childress* is likewise directly on point and supports dismissal, as the defendant there, like Plaintiff here, did not include any allegations suggesting the defendant physically placed the calls at issue.

was whether he had sufficiently alleged his lack of "express consent" to receive prerecorded calls under Section 227(b).  *See Jennings v. Cont'l Serv. Grp., Inc.,* 239 F. Supp. 3d 662, 665–66 (W.D.N.Y. 2017).  In *Charvat*, the defendants challenged whether the plaintiff sufficiently pled vicarious liability, that the calls were "telephone solicitations," or that he did not have an "established business relationship"—the latter of which is an exception to Section 227(c).  As discussed below (*see* Section II.), however, Plaintiff concedes that he has not alleged vicarious liability in the FAC.

*Tickling Keys* involved a facsimile that was attached to the complaint as an exhibit and had the **defendants' names and the sender's phone number on it**.  *See* Case No. 6:17-cv-01734-RBD-LRH (M.D. Fla.), Dkt. 1-2.  Thus, the defendants in that case apparently decided not to challenge direct TCPA liability but instead challenged (i) whether there were sufficient facts pled that the plaintiff was the intended recipient of the fax, if it was received on a traditional fax machine, or if plaintiff actually received the fax under Rule 12(b)(6), and (ii) whether two of the defendants were subject to personal jurisdiction or if plaintiff had adequately plead facts supporting the "injury in fact" element for Article III standing under Rules 12(b)(1) and (2).  *See generally id.,* Dkt. 22.  Though that issue is not conceded in this case, CHW's Motion does not challenge the extent of Plaintiff's alleged "injury" at this time but whether he has pled facts supporting the other required elements of Article III standing—traceability and redressability.  *See* Motion at 3, 21-22 & fn. 4.

Lastly, in *Aronson*, the court noted that the "genesis" of the defendant's motion to dismiss there was the plaintiff's prior averments in his original complaint and in other cases that specifically identified a third party (not defendant) as having made the alleged calls at issue, which contradicted allegations in his amended complaint.  The court held that, under Third Circuit precedent, the court could not consider those prior averments under Rule 12(b)(6) because they were outside the scope of the pleadings. *Aronson v. Generation Mortg. Co.*, 2014 WL 641622, at *1 (W.D. Pa. Feb. 19,

2014). But that is not the law in this Circuit, where courts need not accept "allegations that contradict matters properly subject to judicial notice" such as the records of prior court proceedings. *Stratton v. Mecklenburg County Dep't of Soc. Serv.*, 521 F.App'x. 278, 288, 290 n. 22 (4th Cir. 2013) (citing *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) and Fed. R. Evid. 201). *See also SunTrust Mortg., Inc. v. Nationwide Equities, Corp.*, 2012 WL 4953120, at *4 (E.D. Va. Oct. 16, 2012) ("[A] party … cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version.") (Hudson, J.).

As applied here, Plaintiff alleged that both "Defendants"—CHW and the since-dismissed defendant Home Warranty Administrators, Inc.—made the at issue calls in his original complaint. *See* Motion at 1, fn. 1 (discussing Dkt. 1). Though no longer a party, Plaintiff's FAC still contains references to that other former defendant, suggesting that entity <u>and/or</u> perhaps some other third party "associated with" CHW or "someone acting on CHW's behalf" was actually responsible for the alleged calls. *Id.* Yet, Plaintiff now posits in his brief that his "pleadings make no mention to [*sic*] a third party, but rather clearly indicate [CHW] made the calls in question." Resp. at 15, fn.4. Not only is Plaintiff's argument demonstrably false, but also this Court need not accept Plaintiff's contradictory allegations as true under binding Fourth Circuit precedent. *See also Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) ("Contradictory allegations … are inherently implausible, and fail to comply with Rule 8, *Twombly*, and *Iqbal*.").

## II. <u>Plaintiff Concedes CHW's Vicarious TCPA Liability Arguments.</u>

Plaintiff appears to concede that he has not adequately pled vicarious TCPA liability, arguing in his Response that (i) his "pleadings make no mention to [*sic*] a third party" despite allegations in the FAC to the contrary (like the complaint in *Hicks*); and (ii) vicarious liability "is not pertinent to the current issues before this Court." Resp. at 12, fn. 3 and 15, fn. 4. Though Plaintiff's Response

also inconsistently proclaims in conclusory fashion (p. 9) that "it is nearly a foregone conclusion that [CHW] is responsible" for the calls at issue "either directly or vicariously," Plaintiff ignores and does not (a) address CHW's arguments that his FAC lacks any facts suggesting that CHW had any "control" over any third party who may have called him, as required to state a claim for vicarious TCPA liability, or (b) demonstrate where such facts exist in his FAC. *See* Motion at 11-14. Thus, Plaintiff has conceded this issue. *See Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (ignoring opponent's argument is "an outright failure to join in the adversarial process [that] ordinarily result[s] in waiver"); *Chamblee v. Old Dominion Sec. Co.*, 2014 WL 1415095, at *8 (E.D. Va. Apr. 11, 2014) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (*quoting Coleman v. Johnson*, 2014 WL 116150, at *4 (D.D.C. 2014), *rev'd in part on other grounds sub nom. by Coleman v. Duke*, 867 F.3d 203 (D.C. Cir. 2017)); *see also Schwartz v. Wellin*, 2014 WL 12637912, at *3 (D.S.C. Aug. 14, 2014) ("'It is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and ... perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'") (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)).

Given Plaintiff's vicarious liability concessions above,[9] and because he fails to plead facts supporting direct TCPA liability or refute CHW's arguments on that point, Plaintiff's entire TCPA

---

[9] In any event, CHW's Motion demonstrates that numerous courts have dismissed TCPA complaints ***at the pleadings stage prior to discovery***—including, most notably, Judge Ellis in *Aaronson*—for lacking facts demonstrating an agency relationship with or "control" over a third party allegedly responsible for the calls at issue. *See* Motion at 11-14 (citing various cases). As noted above, Plaintiff's Response does not refute or even address this; and Plaintiff even admits that he has no idea "what entity actually initiated the calls to him." Resp. at 13. And again, while Plaintiff suggests he needs discovery to plead vicarious liability (*see id.* at 14), he is not entitled to any. *See* Motion at 10, fn. 8 (quoting, *inter alia*, *Iqbal*, 556 U.S. at 678–79 (holding Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions")).

12

claim should be dismissed for this reason alone.  *See Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) ("Because identity is a necessary element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims.").

### III.   Plaintiff's Arguments Regarding His TCPA DNC Claims Are Also Unavailing.

Plaintiff dedicates the majority of his Response to a failed attempt to support the other pertinent aspects of his purported "DNC" rule violation claims under Sections 227(c) and/or 227(d) of the TCPA.  *See* Resp. at 16-29.  Those arguments miss the mark for several reasons, as well:

**First**, as CHW demonstrated in its opening brief and as is further discussed above, Plaintiff must plausibly allege facts supporting his conclusions that CHW "physically placed" the at issue calls to state a plausible claim for direct liability under Section 227(c).  Because Plaintiff failed to allege such facts, concedes there is no vicarious liability, and cites no authority disputing this pleading requirement, his TCPA claim should be dismissed under Rule 12(b)(6) for this reason alone. *See also* Hicks, Exhibit A at 10 ("Given the infirmities in the underlying [c]omplaint, there is also [an] insufficient basis to assign plausible [direct] liability to Defendant under § 227(c).").

Similarly, Plaintiff argues that the at-issue calls qualified as a "telephone solicitation" sufficient for a National DNC Registry violation simply because the callers allegedly "attempted to sell a home warranty" to him.  Resp. at 16-17.  Plaintiff misses the point.  As CHW demonstrated in its Motion (p. 15), a violation of the TCPA's National DNC Registry rules requires a "residential telephone subscriber" to have received more than one "telephone solicitation" call or text message in a 12-month period "***by or on behalf of the same entity.***" 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2) & (f)(14) (emphasis added).  Because Plaintiff fails to plead sufficient non-conclusory facts that the at-issue calls were made "by or on behalf of" CHW, his National DNC Registry claim likewise fails as a matter of law.  Plaintiff fails refute in his Response, thus conceding this issue too.

*See Alvarez, Chamblee,* and *Schwartz, supra.*

**Second**, Plaintiff's attempt to state a claim under the TCPA's "internal DNC list" regulations under 47 C.F.R § 64.1200(d) is likewise unavailing.  Indeed,  Plaintiff's allegations in this regard are based on the same threadbare conclusory allegations alleged in support of his National DNC Registry claim.  Furthermore, Plaintiff does not allege any facts in his FAC that he actually ever made an internal DNC request *to CHW* or that *CHW* failed to honor such a request within a reasonable time period, much less any facts that *CHW* did not have proper internal DNC list procedures in place.  Thus, even assuming *arguendo* that a violation of the internal DNC list regulations affords Plaintiff private cause of action against CHW (and, as discussed in the Motion and further below, it does not), such a claim nevertheless also fails as a matter of law here.  *See, e.g., Sterling v. Securus Techs., Inc.*, 2020 WL 2198095, at *5 (D. Conn. May 6, 2020) (holding conclusory allegations that defendant "did not have in place procedures for the maintenance of an internal do-not call list" insufficient under federal pleading standards); *Laccinole v. Appriss, Inc.,* 2020 WL 1848088, at *4 (D.R.I. Apr. 13, 2020) ("[A]llegations concerning [defendant]'s supposed failure to implement the requisite procedures are not well-pleaded and must be discarded. Therefore, [plaintiff] does not state a plausible claim for relief under 47 U.S.C. § 227(c) or 47 C.F.R. § 64.1200(d).").

**Third**, Plaintiff misconstrues CHW's authorities on the internal DNC issue.  For example, in *Worsham v. Travel Options* (*see* Motion at 15), the district court, after performing a lengthy and well-reasoned analysis of the TCPA and all of its various implementing regulations, noted as follows:

> The TCPA permits a person to institute a private action based on a violation of subsection b and the regulations prescribed under that subsection "to enjoin such violation [and/or] ... to receive $500 in damages for each such violation," § 227(b)(3); as well, subsection c grants a right of private action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [subsection c] ... to enjoin such violation [and/or] ... to receive up to $500 in damages for each such violation," § 227(c)(5). ***No private right of action is granted under any other subsection of § 227.***

14

> The FCC is charged with the responsibility of prescribing regulations to implement the requirements of the TCPA's various subsections and, accordingly, has promulgated regulations codified at 47 C.F.R. § 64.1200. The FCC has addressed the specific concerns expressed in subsection b within § 64.1200(a), and it has addressed those expressed in subsection c within § 64.1200(c). What the FCC has prescribed in § 64.1200(b) implements subsection d of the TCPA, which mandates regulations for technical and procedural standards for telephone calls initiated by an automatic telephone dialing system or calls using an artificial or prerecorded voice system; *likewise, the requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection d of the TCPA*.

*Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F.App'x 165 (4th Cir. 2017) (emphasis added). Put simply, and contrary to Plaintiff's argument (*see* Resp. at 21-22), the court in *Worsham* did indeed conduct a thorough analysis and concluded that the internal DNC regulations in § 64.1200(d) fall under Section 227(d) of the TCPA, which does not grant plaintiffs a private cause of action, unlike the National DNC regulations falling under Section 227(c) which does. Moreover, other Fourth Circuit courts have followed *Worsham* and have not only held that "47 C.F.R § 64.1200(d) appears to fall within subsection [§ 227] *d*'s scope, which does not provide a private right of action," but have also dismissed such claims under Rule 12(b)(6). *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 982 (D. Md. 2019) (emphasis in original). *See also Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at *15 (W.D. Okla. July 16, 2019), *amended on denial of reconsideration on other grounds by*, 2019 WL 5722207 (Nov. 5, 2019) (granting summary judgment, noting: "The court declines to [hold] § 64.1200(d) was promulgated pursuant to § 227(c) and agrees, instead, with *Burdge*, *Worsham* and other decisions that have concluded § 64.1200(d) was promulgated under § 227(d).") (citing *Worsham* and *Burdge v. Ass'n Health Care Mgmt., Inc.,* 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011)).

**Fourth**, Plaintiff's cited authorities on internal DNC claims are distinguishable for a number of reasons. For example, though Plaintiff cites (albeit without any analysis) to one seemingly

contrary Fourth Circuit district court opinion on this front (*see* Resp. at 20, citing *Boger v. Citrix Systems*), the defendant there apparently did not argue in its motion to dismiss whether a violation of the internal DNC regulations under 47 C.F.R. § 64.1200(d) falls under Section 227(c) or (d) of the TCPA or gives rise to a private cause of action in the first place, like CHW did here. *See* Case No. 8:19-cv-01234-PX (D. Md.), Dkt. 14-1.  Thus, the *Boger* court did not consider this issue or distinguish *Worsham* when rendering its opinion, and Plaintiff's reliance on *Boger* here is misplaced.

Additionally, while the district court in *Barrett* did note that 47 C.F.R. § 64.1200(d) was "consistent" with Section 227(c) of the TCPA (*see* Resp. at 20-21), it also recognized that "47 C.F.R. § 64.1200(d) may well have derived from different provisions of the TCPA, including both 47 U.S.C. § 227(c)" and § 227(d)—and the court merely cited to *Worsham* in a footnote but did not evaluate the reasoning in *Worsham* or attempt to distinguish it.  *Barrett v. Vivint, Inc.,* 2020 WL 2558231, at *7, n. 86 (D. Utah May 20, 2020).  Thus, *Barrett* is hardly the definitive authority on this issue.

More fundamentally, all of Plaintiff's cited authorities on this issue, including *Barrett* in particular, rely heavily on the Sixth Circuit's decision in *Charvat v. NMP* (*see* Resp. at 22, citing 656 F.3d 440, 448 (6th Cir. 2011)), which not only predates *Worsham* but was also binding authority in some instances (*e.g., Dobronski* and *Stevens-Bratton*).  But as one judge aptly noted, *Charvat* merely "states" that § 64.1200(d) was promulgated under § 227(c) rather than § 227(d) "without analysis" in stark contrast to the well-reasoned detailed opinion in *Worsham*.  *Braver*, 2019 WL 3208651, at *15.  This Court should rule similarly and reject *Charvat* and its flawed progeny here.

**Fifth**, Plaintiff suggests that it is improper for the Court to rule on whether his alleged internal DNC request was honored within a "reasonable time" under 47 C.F.R. § 64.1200(d)(3) prior to discovery.  *See* Resp. at 18-19.  However, even courts that have recognized a private cause of action for alleged violations of that regulation have, in fact, dismissed such claims at the pleadings stage

where no further calls occurred outside of the thirty-day window.  *See* Motion at 16, fn. 9 (citing *Orsatti*).[10]  In this case, even after having had the opportunity to amend, Plaintiff's FAC still alleges that the few calls at issue occurred in a mere span of ***eight days*** after he supposedly made his DNC request—which is well within and far below the maximum 30-day period for someone (*i.e.*, whomever he made the request to, if at all) to honor his DNC request under Section 64.1200(d)(3)— and he does not allege to have received any calls thereafter.  In short, nothing prohibits the Court from ruling on this issue now and, while Plaintiff is not entitled to any (*see* Motion at 10, fn. 8 (citing *Hurley*, *Hyatt*, *Iqbal*, and *Cholakyani*)), no amount of discovery would change this.

**Sixth**, like his purported internal DNC list claim, Plaintiff's "willfulness" allegations in his FAC remain entirely conclusory, essentially amount to a ***single sentence*** in his FAC, and lack any requisite supporting facts.  *See* FAC ¶ 27.  Such bald allegations are plainly insufficient to survive dismissal.  *See, e.g., Syed v. Mohammad,* 2016 WL 8731783, at *1 (E.D. Va. Apr. 1, 2016) ("[L]egal conclusions unsupported by allegations of specific facts are insufficient to withstand" a Rule 12(b)(6) motion.) (citing *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994)).

## IV.   **Plaintiff's Arguments Regarding His VTPPA Claim Are Likewise Unavailing.**

Plaintiff's arguments in support of his duplicative VTPPA claim in Count II (*see* Resp. at 23-26) fare no better than his TCPA arguments.  Again, Plaintiff fails on this front on several levels:

For starters, in a tacit acknowledgement that his VTPPA claim is based on the exact same alleged conduct as his fatally flawed TCPA claim, Plaintiff "relies on his earlier argument to

---

[10] *See also Wolfkiel v. Intersections Ins. Servs. Inc.,* 303 F.R.D. 287, 291–92 (N.D. Ill. 2014); *Benzion v. Vivint, Inc.*, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014).  In any event, such courts have also held that a "failure to meet [§64.1200](d)(3)'s specific minimum standard of honoring a recipient's do-not-call request"—*i.e.,* within 30 days—does <u>not</u> result in a violation; only the caller's failure to implement proper procedures does.  *Smith v. Truman Rd. Dev., LLC*, 2020 WL 2044730, at *16 (W.D. Mo. Apr. 28, 2020) (citing various cases).  But as noted above, Plaintiff's few pled allegations on CHW's supposed "procedures" are entirely conclusory.  *See* FAC ¶ 28-30, 35.

demonstrate that he has adequately pleaded a claim under the VTPPA, just as those arguments show he has given Defendant notice of his claims under the TCPA." Resp. at 23. Thus, since Plaintiff fails to plead sufficient (nor any) facts connecting CHW to the at-issue calls in support of his underlying TCPA claims, his VTPPA claim naturally fails. *See Hicks*, Exhibit A, at 10 (holding that the plaintiff's VTPPA claim "must fail at this stage for similar reasons as the parallel TCPA claim"). *See also Cunningham v. Politi*, 2019 WL 2519702, at *7 (E.D. Tex. Apr. 26, 2019), *report and rec. adopted*, 2019 WL 2526536 (June 19, 2019) ("Because Plaintiff's underlying (federal) TCPA claims fail, Plaintiff's state TCPA claim … also fails."). Plaintiff does not demonstrate otherwise.[11]

Further, while Plaintiff notes that the VTPPA provides for attorneys' fees and costs while the TCPA does not (*see* Resp. at 24), Plaintiff ignores and does not refute the authority cited by CHW in this regard holding that "[s]uch expenses are generally not considered 'damages' because they are not the legitimate consequence of the tort … sued upon." Motion at 20, n. 11 (quoting *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1480 (10th Cir. 1984) (citing 22 Am. Jur. 2d Damages § 165)). This Court, applying Supreme Court precedent, has ruled similarly. *See, e.g., Bradford v. HSBC Mortg. Corp.,* 280 F.R.D. 257, 262 (E.D. Va. 2012) (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994)).

Additionally, while Plaintiff relies heavily on *Boger* here too (*see* Resp. at 23-24), the court there noted several key differences between the Maryland analog statute and the TCPA beyond the recovery of fees impacting its decision, including that the Maryland statute did not allow corporate claims or for the recovery of treble damages, which are not an issue under the effective version of the VTPPA in this case. *See* 2018 WL 1851146, at *3 (D. Md. Apr. 18, 2018). But even then, the

---

[11] Contrary to Plaintiff's suggestion (*see* Resp. at 5), there is no "presumption" of vicarious liability under the VTPPA. *See Zhu v. DISH Network, LLC*, 808 F. Supp. 2d 815, 819 (E.D. Va. 2011) (O'Grady, J.) (granting summary judgment on VTPPA claim where record was devoid of any factual "nexus" between the defendant and third party that physically made the at-issue calls).

*Boger* court noted that "[a]t least one judge in th[at] District has expressed doubts that plaintiffs may recover statutory damages under both the TCPA and [the Maryland equivalent of the VTPPA] for the same violations." *Id*. (citing *Pasco v. Protus IP Sols., Inc*., 826 F. Supp. 2d 825, 846 (D. Md. 2011)). Thus, Plaintiff's continued reliance on *Boger* in support of his VTPPA claim is misplaced.

Lastly, *Boger* does not take into account the fact that, in *Mims v. Arrow Financial Services,* "the United States Supreme Court held federal and state courts enjoy concurrent jurisdiction over TCPA claims." *Masters v. Wells Fargo Bank S. Cent.*, 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013) (citing 132 S.Ct. 740, 747 (2012)). Like the court held in *Masters*, which involved a substantially similar analog statute as is at issue here, there is nothing in the TCPA or in the VTPPA suggesting that "either legislative body intended to allow double recovery under both state and federal law for the same TCPA violations" and instead "plaintiffs have a choice of forum rather than two separate avenues for recovery." *Id.* Plaintiff does not argue or demonstrate otherwise in his Response, much less refute CHW's argument or authority showing that his VTPPA claim, which arises from the same operative facts and seeks identical relief as his TCPA claim, is properly dismissed as being duplicative under Rule 12(b)(6). *See* Motion at 19 (quoting *Yor-Wic Constr. Co.*). Consequently, Plaintiff's VTPPA claim should be dismissed for all these additional reasons.

## V.    Plaintiff Has Not Met His Burden to Plead Article III Standing.

Plaintiff's argument that he has Article III standing is also unavailing. In this regard, Plaintiff unilaterally proclaims that he "has demonstrated that the offending conduct in his complaint is traceable to Defendant by alleging that Defendant is the one who called him. ***Nothing more is needed.***" Resp. at 7 (emphasis added). Plaintiff is wrong. Like Judge O'Grady ruled in the *Hicks* case, (i) "[t]he arguments against causation [*i.e.*, traceability] and redressability are, of course, interconnected – because Plaintiff fails to allege facts to trace the injury to [CHW]'s conduct, there

is likewise a failure to show redressability by [CHW]" and (ii) "[b]ased on the deficiencies under Rule 12(b)(6), Plaintiff also fails to properly plead causation and redressability" for Article III standing.  Exhibit A at 10.  Therefore, like in *Hicks*, Plaintiff's entire FAC should also be dismissed under Rule 12(b)(1) for lack of federal subject matter jurisdiction due to Plaintiff's failure to plead sufficient (or, rather, any) facts meeting his burden of demonstrating Article III standing.[12]

## VI.   Plaintiff Concedes that His Complaint Should Be Dismissed With Prejudice.

Finally, buried at the end of his Response, Plaintiff requests that he be given "leave to [further] amend his complaint to address any deficiencies the Court finds in his [FAC]."  Resp. at 29.  However, Plaintiff does not explain how further amendments could possible rectify the many fatal flaws of his FAC or why he should be afforded a third bite at the apple despite being represented by counsel, having already amended, and having had the benefit of CHW's prior dispositive motion raising many of the same arguments in the Motion at bar before he did so.  Plaintiff also does not mention, let alone refute, in his brief CHW's argument or authorities as to why his FAC should be dismissed with prejudice.  *See* Motion at 22.  Thus, Plaintiff has also conceded this point and, therefore, the Court should decline Plaintiff's request.  *See Alvarez, Chamblee, and Schwartz, supra.*

## CONCLUSION

For all of the reasons stated above and in the Motion, Defendant CHW Group, Inc. respectfully requests that the Court enter an order dismissing the FAC in its entirety and with prejudice, along with granting Defendant all other relief the Court deems just and proper.

---

[12] Plaintiff's scant cited authorities on standing (*see* Resp. at 7, citing *Drake, Hurley*, and *Wick*) are also distinguishable and inapposite, as in each the plaintiffs alleged facts suggesting the defendants in those matters—and not some unidentified third party, like Plaintiff does here— actually, physically placed the alleged calls at issue.  And, in *Hurley*, the court dismissed one of the defendants where there were no facts alleged that defendant physically placed or was "so involved" to be deemed to have physically placed the calls at issue and, thus, it was dismissed on Rule 12(b)(6) grounds, as noted above.  *See* discussion at Section I.b., *supra*.  Thus, *Hurley* supports CHW.

Dated: August 31, 2020                 Respectfully submitted,

By: /s/ Andrew Zimmitti
     Andrew Zimmitti
     John W. McGuinness (admitted *Pro Hac Vice*)
     MANATT, PHELPS & PHILLIPS, LLP
     1050 Connecticut Avenue, NW, Suite 600
     Washington, D.C. 20036
     Telephone: 202-585-6500
     Facsimile: 202-585-6600
     azimmitti@manatt.com
     jmcguinness@manatt.com

     A. Paul Heeringa (admitted *Pro Hac Vice*)
     MANATT, PHELPS & PHILLIPS, LLP
     151 North Franklin Street, Suite 2600
     Chicago, IL 60606
     Telephone: 312-529-6308
     Facsimile: 312-529-6315
     pheeringa@manatt.com

     *Attorneys for Defendant CHW Group, Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on, August 31, 2020, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

By: /s/ Andrew Zimmitti
Andrew Zimmitti
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600
azimmitti@manatt.com